JOE E. ARMSTRONG,                    )
                                     )
        Petitioner/Appellee,         )
                                     )        Appeal No.
                                     )        01-A-01-9610-CH-00476
VS.                                  )
                                     )        Davidson Chancery
                                     )        No. 95-1996-III
TENNESSEE DEPARTMENT OF              )
VETERANS AFFAIRS, COMMISSIONER       )
FRED TUCKER in his official capacity as )
Commissioner of the Tennessee Department )
of Veteran Affairs, TENNESSEE CIVIL  )
SERVICE COMMISSION and ELEANOR       )
E. YOAKUM, in her official capacity as )
Secretary of the Tennessee Civil Service )
Commissioner,                        )
                                     )
        Respondents/Appellants.      )

FILED

July 2, 1997

Cecil W. Crowson
Appellate Court Clerk

COURT OF APPEALS OF TENNESSEE
MIDDLE SECTION AT NASHVILLE

APPEALED FROM THE CHANCERY COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE ROBERT S. BRANDT, CHANCELLOR

PETER M. OLSON
OLSON & OLSON, PLC
114 Franklin Street
Clarksville, TN 37040
        Attorney for Petitioner/Appellee

JOHN KNOX WALKUP
Attorney General and Reporter

JAMES C. FLOYD
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243-0490
        Attorney for Respondents/Appellants

AFFIRMED AND REMANDED

BEN H. CANTRELL, JUDGE

CONCUR:

TODD, P.J., M.S.
WELLES, J.

# O P I N I O N

The question in this case is whether a state employee protected by civil service has a right to be heard before being reclassified to the unprotected executive service. The Chancery Court of Davidson County held that the employee had a right to grieve the reclassification. We affirm.

## I.

The appellee, Joe E. Armstrong, was initially hired at the Tennessee Department of Veteran Affairs ("TDVA") in May of 1989 in the position of Administrative Service Assistant 1, an executive position. In the Spring of 1994, by which time Mr. Armstrong had been promoted to the position of Administrative Assistant 4, he was informed that his employment status would be transferred from executive to career service. W. D. Manning, the Commissioner of the TDVA at the time, made a written request for such a change "due to a change in the reporting relationship." He wrote that "[p]rior to September 20, 1993 [Mr. Armstrong's position along with one other] reported directly to me" but that they currently were "reporting to Administrative Services Assistant 5." The State Department of Personnel approved Mr. Manning's request by a letter dated March 10, 1994 which stated that the approval was "based upon the information [TDVA] staff provided that these positions, which had previously reported to an [sic] Commissioner, now report to the Director of Administrative Services (Administrative [S]ervices Assistant 5)."

With a change of administration, Fred Tucker became the Commissioner of the TDVA on January 21, 1995. On February 9, 1995, Mr. Tucker wrote a letter requesting that the classification of three positions including Mr. Armstrong's be changed to executive status as "the reporting relationship of these three positions has

been changed to report directly to me." On February 22, 1995, Tennessee Department of Personnel Commissioner, Susan Williams, reclassified Mr. Armstrong's position from career service to executive service status. Only two days following the reclassification of Mr. Armstrong's position, on February 24, 1995, Mr. Tucker terminated Mr. Armstrong from this position.

In a letter dated March 15, 1995, Mr. Tucker denied Mr. Armstrong's request for a grievance hearing stating that the procedures granting employees the right to grieve apply only to employees in career services. Mr. Armstrong then obtained counsel and requested a Level V hearing before the Commission in a letter dated April 11, 1995. On April 27, 1995, Ms. Williams, as secretary of the Commission sent Mr. Armstrong a letter stating that because he "was an employee occupying an executive service position [under Tenn. Code Ann. § 8-30-208(b)(5)], the [Commission] lack[ed] statutory authority to hear his grievance concerning his dismissal." Mr. Armstrong then filed this petition in Chancery Court claiming that the reclassification of his job and subsequent termination from this job divested him of a constitutionally protected property right and thereby deprived him of due process.

## II.

The facts of this case must be viewed with an understanding of the Tennessee Civil Service Code which divides all positions in the state service between career service and executive service. Tenn. Code Ann § 8-30-208 (1993); *see also* § 8-30-101(a)(23) (Supp. 1996) (defining "[s]tate service" as "all officers and positions of trust or employment in the service of state government in the executive branch and all boards, commissions and agencies in state government" with certain exceptions). Generally speaking, executive service employees are those in higher level management and administrative positions. *Id.* § 8-30-208(b); *see also* Op. Att'y Gen. 95-088 (Tenn. 1995). Among those positions designated for executive service are

specific positions fully defined by the titles of the positions such as "[m]embers of boards, commissions, agencies and authorities and the chief executive officer of each board, commission, agency and authority and the commissioner of each department." Tenn. Code Ann. § 8-30-208(b)(1). The executive service also includes positions which are not defined by the particular job's title but by the job's description. An example is the category of executive service into which the appellee's position was classified which includes "[a]ny position serving in a confidential administrative or program management capacity to a commissioner, deputy commissioner, assistant commissioner or equivalent authority." *Id.* § 8-30-208(b)(5). All regular full-time positions in state service which are not designated as executive service in Section 8-30-208(b) are in the career service. *Id.* § 8-30-208(c).

Career service employees who have completed their initial working test periods are called "regular employees" and they are given certain protections under the Civil Service Code. *See id.* § 8-30-101(a)(20) (Supp. 1996) (defining "regular employee"). Section 8-30-328 sets up a grievance procedure for regular employees. Moreover, while executive service employees serve at the pleasure of their employer, Tenn. Dep't of Personnel R. § 1120-10-.02, a regular employee in the career service acquires a property right in that position. Tenn. Code Ann. § 8-30-331(a) (1993). With such a right, "no suspension, demotion, dismissal or any other action which deprives a regular employee of such employee's property right will become effective until minimum due process is provided." *Id.* § 8-30-331(a). The statute provides that minimum due process includes written notice of the charges and the opportunity to respond to these charges before any action is taken. *Id.* § 8-30-331(b)(1)-(2). The statute states that the employee's opportunity to respond "shall be for the purpose of allowing the employee to present information to the manager regarding the disciplinary action under consideration." *Id.* § 8-30-331(b)(4).

In this case the trial court based its decision on the Tennessee Department of Personnel Rules on Disciplinary Actions which contain similar language to the code with respect to minimum due process. Rule 1120-10-.03(1) states that "[c]areer employees have a 'property right' to a position in the classification in which they currently hold career status. Therefore, no suspension, demotion, dismissal or any other action which deprives a regular (career) employee of his property right will become effective until minimum due process is provided as outlined below." Like Section 8-30-331(b) of the Tennessee Code, the Department rules provide that minimum due process mandates written notification to the employee of the charges against him as well as the opportunity for the employee to answer these charges and present information which might influence the decision. Tenn. Dep't of Personnel R. 1120-10-.03(2). *See* Tenn. Code Ann. § 8-30-205 (1993) (providing that the rules adopted by the commissioner to carry out the provisions of the civil service code "shall have the force and effect of law").

### III.

The Fourteenth Amendment to the United States Constitution protects individuals against government deprivations of "life, liberty or property without due process of law." U.S. Const. amend. XIV, § 1. In a due process case, the court follows an established two-step analyses determining whether the plaintiff was deprived of a protected interest and, if so, what process is due. *Rowe v. Board of Educ. of Chattanooga,* 938 S.W.2d 351, 354 (Tenn. 1996), *cert. denied*, 117 S. Ct. 1271 (1997) (citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569-70, 92 S. Ct. 2701, 2705, 33 L. Ed. 2d 548 (1972)). The case before us focusses on the first question, specifically whether Mr. Armstrong had a constitutionally protected property interest in his job giving rise to due process protection.

"Property interests are not created by the federal constitution. Instead, they are created and defined 'by existing rules or understandings that stem from an independent source such as state law.'" *Rowe*, 938 S.W.2d at 354 (citing *Roth*, 408 U.S. at 577, 92 S. Ct. at 2709). The United States Supreme Court has stated that "[t]he hallmark of property . . . is an individual entitlement grounded in state law, which cannot be removed except 'for cause.'" *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430, 102 S. Ct. 1148, 1155, 71 L. Ed. 2d 265 (1982). As stated above, Tennessee law gives certain civil service employees a constitutionally protected property interest in continued employment which cannot be extinguished unless the employees are afforded procedural due process. *See* Tenn. Code Ann. § 8-30-331 (1993); Tenn. Dep't of Personnel R.1120-10-.03(1).

It is not disputed that once Mr. Armstrong became a career employee in March of 1994, he satisfactorily completed his initial probationary period under the administration of the former Commissioner of TDVA, and thus became a regular employee with a property interest in his employment. *See* Tenn. Code Ann. § 8-30-331; § 8-30-312 (provides for probationary period of at least 3 months). As a regular employee, the law clearly provides that Mr. Armstrong could not be deprived of his property right by "suspension, demotion, dismissal or **any other action**" without minimum due process. *Id.* § 8-30-331(emphasis added). The question becomes whether the reclassification from career to executive service constitutes "any other action" thereby triggering the minimum due process protections of Section 8-30-331. The lower court answered this question in the affirmative observing that the language "any other action" is exceedingly broad. We agree. Reclassification of an employee from the career service to the executive service is just as much a deprivation of property as suspension, demotion, or dismissal. Indeed, as Mr. Armstrong's case illustrates, reclassification might immediately precede termination and thereby provide the state with a means of effecting suspension, demotion, or dismissal without the burden of providing due process.

Moreover, with no means to review the reclassification of executive service employees, the state can arbitrarily determine which employees will lose their protected civil service status. As the trial court noted, it "requires the exercise of some discretion to decide whether a state employee falls within" the category of executive service (Tenn. Code Ann. § 8-30-29(5)) into which Mr. Armstrong was classified. "To hold [that reclassification does not trigger minimum due process] would completely eliminate real civil service protection for many, if not most, career service employees. The appointing authority, for whatever reason, political or otherwise, could simply reclassify a position and terminate the employee." This court has recognized that the due process clause was "intended to secure the individual from the arbitrary exercise of the powers of government." *Lee v. Ladd*, 834 S.W.2d 323, 325 (Tenn. App. 1992) (quoting *Daniels v. Williams*, 474 U.S. 327, 331, 106 S. Ct. 662, 665, 88 L. Ed. 2d 662, 668 (1986)).

We recognize that in both the statute and the Department rule, the process that is due is articulated in the context of disciplinary procedures against an employee. Though "suspension, demotion, dismissal or any other action which deprives a regular employee of such employee's 'property right'" might occur most often as a consequence of disciplinary procedures, the statute does not require that the employee's loss be the result of discipline. Tenn. Code Ann. § 8-30-331(a). Rather, the statute clearly creates a property right without qualification to all "'[e]mployees who have successfully completed their probationary period" and ensures due process for "any . . . action" which deprives them of their property interest. *Id.*

In holding that the reclassification of an employee's position from career service to executive service requires that the employee receive notice and the opportunity to respond, we acknowledge that the legislature has given the Commissioner of the Tennessee Department of Personnel the duty to assign the

positions in the state service which are not specifically identified as career or executive service. Tenn. Code Ann. § 8-30-208(d). The statute provides that "[s]uch determination shall be based solely on duties, responsibilities and reporting relationships and **shall not be subject to review through any procedure**." *Id.* (emphasis added). To the extent that this statute cannot be reconciled with the state-created property interest in employment possessed by a Tennessee career service employee, we find that it is inadequate as a matter of constitutional law. In addressing the nature of constitutional due process, the United States Supreme Court stated that because "'minimum [procedural] requirements [are] a matter of federal law, they are not diminished by the fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action'. . . . Indeed, any other conclusion would allow the State to destroy at will virtually any state-created property interest." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S. Ct. 1148, 71 L. Ed. 2d 265 (1982) (quoting *Vitek v. Jones*, 445 U.S. 480, 491, 100 S. Ct. 1254, 1263, 63 L. Ed. 2d 552 (1980)).

The holding in *Logan* is instructive. There, the state of Illinois had established a comprehensive scheme for adjudicating allegations of employment discrimination. *Logan*, 455 U.S. at 422. After being discharged from the defendant employer, the plaintiff filed a charge with the Illinois Fair Employment Practices Commission which triggered the Commission's statutory obligation to convene a fact-finding conference within 120 days. *Id.* at 426. However, by no fault of the plaintiff's, the Commission's representative scheduled the conference for a date five days after the expiration of the statutory period. *Id.* Finding the legislative language with regard to scheduling a conference within 120 days to be mandatory, the state supreme court held that the failure to comply with this language deprived the Commission of jurisdiction to hear the plaintiff's charge. *Id.* at 427. In a decision which reversed the state court, the Supreme Court asserted that "'[w]hile the legislature may elect not to confer a property interest, . . . it may not constitutionally authorize the deprivation of

such an interest, once conferred, without appropriate procedural safeguards.'" *Id.* at 432 (quoting *Vitek,* 445 U.S. at 490-91, n.6, 100 S. Ct. at 1262-62, n.6) (quoting *Arnett v. Kennedy,* 416 U.S. 134, 167, 94 S. Ct. 1633, 1650, 40 L. Ed. 2d 15 (1974)). Thus, while the General Assembly of Tennessee can completely do away with the constitutionally-protected interest in continued employment for the state's civil service regular employees, it cannot establish a system where these employees can be arbitrarily deprived of their interest by reclassification without due process protection.

We hold that Mr. Armstrong, as a regular employee with a property interest in his position, had a right to procedural due process upon the reclassification of his position to executive service. In addition, he was entitled to use the grievance procedures established by the legislature for regular employees. Tenn. Code Ann. § 8-30-328 (1993) (grievance procedures); § 8-30-331(c) (stating that "[t]he commission shall determine as a preliminary matter to the merits of a grievance, a grievant's allegation of denial of minimum due process"). We stress that it is the reclassification of a career service employee to executive service that requires due process and not the termination of an executive service employee, for the law explicitly provides that executive service employees serve at the pleasure of their employers. The nature of Mr. Armstrong's grievance or complaint must be that his position has been wrongly assigned to the executive service. If it is ultimately determined that Mr. Armstrong's duties correspond to those of an executive employee as outlined in Section 8-30-29 and that his reassignment was proper, then he will loose his property right in his position. If, on the other hand, it is determined that his duties do not place him within the scope of executive service, he is entitled "to be reinstated or made whole or both" pursuant to Section 8-30-328(e).

Lastly, we address appellant's contention that there is no legal foundation for this appeal. Appellant claims that this was not a "contested case" within the chancery court's review authority under the Uniform Administrative

- 9 -

Procedures Act ("UAPA") which provides that "[a] person who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter." Tenn. Code Ann. § 4-5-322(a) (Supp. 1996). As stated, with regard to the UAPA, the trial court concluded "that the decision not to hold a contested case hearing is subject to judicial review just as if a contested case hearing were held." The court reasoned that "[j]udicial review would be meaningless if it could be avoided by simply refusing to hold a contested case hearing. More importantly, if a party has a right to a contested case hearing and is denied one, precluding judicial review of the denial would leave the party with no judicial redress of an obvious violation of the party's right to a hearing."

In support of its contention that the UAPA is inapplicable, appellant relies upon *Mid-South Indoor Horse Racing, Inc. v. Tennessee State Racing Comm'n*, 798 S.W.2d 531 (Tenn. App. 1990), which involved the issue of the UAPA's applicability to the review of licensing proceedings in which the plaintiff was denied a license to conduct horse racing. In *Mid-South*, this court stated that such proceedings "will be treated as 'contested cases' only if they contain three essential elements. They must be a 'proceeding' conducted by an 'agency' after the opportunity for a 'hearing.' . . . Proceedings lacking any of these ingredients are not contested cases." *Id.* at 537. In the case before us, the appellant asserts that since the Commission did not conduct a proceeding after the opportunity for a hearing, there was no "contested case" as is required by the statute for judicial review.

The problem with appellant's argument is that the *Mid-South* case did not turn on the fact that there was no proceeding after the opportunity for a hearing but rather on the fact that no such proceeding was required. The court stated "the licensing proceeding involved in this case was not a contested case because the commission **was not required** to afford Mid-South a hearing before acting on its application." *Id.* at 537 (emphasis added). Significantly, the UAPA defines "contested

- 10 -

case" as "a proceeding, including a declaratory proceeding, in which the legal rights, duties or privileges of a party **are required by any statute or constitutional provision** to be determined by an agency after an opportunity for a hearing." Tenn. Code Ann. § 4-5-102(3) (1991) (emphasis added). In *Mid-South*, the court found that state law did not contain a contested case hearing requirement nor was there one arising from a constitutionally protected property interest in a racing license. *Mid-South*, 798 S.W.2d at 539-40. On the other hand, in the case at bar, we have concluded that due process requires that a regular employee with a property interest in his position receive the hearing and proceedings upon the reclassification of his position to executive service. Since there is a contested case hearing requirement, we affirm the chancery court in its determination that this was a proper matter for review under the UAPA.

For the foregoing reasons, the decision of the chancery court is affirmed in all respects. As a regular employee with a property interest in his position under Tennessee's Civil Service Code, Mr. Armstrong had a right to procedural due process when his position was reclassified to executive service. We direct that he be allowed to use the grievance procedures established by the legislature to raise his complaint regarding the reassignment of his position. Finally, we affirm the chancery court's

decision to review Mr. Armstrong's petition under the UAPA. The costs on appeal should be taxed to the state.

_____
BEN H. CANTRELL, JUDGE

CONCUR:

_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION


_____
DAVID H. WELLES, JUDGE