IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 10, 2002

## GREGORY HEDGES v. TENNESSEE DEPARTMENT OF CORRECTION

**Appeal from the Circuit Court for Davidson County**
**No. 00C-3571     Barbara N. Haynes, Judge**

---

**No. M2002-00140-COA-R3-CV - Filed December 31, 2002**

---

This appeal involves a prisoner at the Southeast Regional Correctional Facility who was charged with refusing to take a drug test and attempting to alter the results of a drug test. A prison disciplinary board sentenced the prisoner to twenty days in disciplinary segregation and ordered him to pay a four dollar fine for attempting to alter the test results and a twenty-five dollar fine for refusing to take a drug test. The prisoner filed a petition for common-law writ of certiorari in the Circuit Court for Davidson County challenging the disciplinary board's action on the ground that the Department had not complied with its drug testing policy. He also challenged the twenty-five dollar fine on the ground that he had not been convicted of refusing to take a drug test. The trial court granted the Tennessee Department of Correction's Tenn. R. Civ. P. 12.02(6) motion to dismiss the petition. In the absence of the disciplinary board's records, we must presume the truth of the allegations in the prisoner's petition that he was not convicted of refusing to take a drug test. Fining a prisoner for a disciplinary offense of which he was not convicted violates the Department's Uniform Disciplinary Procedures and the prisoner's constitutionally protected property interests. Therefore, we conclude that the prisoner's petition states a claim for which relief can be granted.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part and Reversed in Part**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which WILLIAM B. CAIN, J., joined. PATRICIA J. COTTRELL, J., filed a concurring opinion.

Gregory Hedges, Mountain City, Tennessee, Pro Se.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; and Mark A. Hudson, Senior Counsel, Nashville, Tennessee, for the appellee, Tennessee Department of Correction.

### OPINION

### I.

In January 1985, Gregory A. Hedges and two other persons participated in an armed robbery in Greeneville, Tennessee. They broke into the home of a bank officer and his wife and, after terrorizing the couple for four hours, made off with several items of personal property. A Greene

County jury later convicted Mr. Hedges of first degree burglary, two counts of aggravated assault, two counts of aggravated kidnaping, and two counts of armed robbery. The trial court sentenced him to serve ninety-six years in the state penitentiary.[1] Mr. Hedges was eventually incarcerated at the Southeast Regional Correctional Facility at Pikeville.

On October 4, 2000, corrections officers at the Pikeville facility asked Mr. Hedges and his cell mate, Thomas D. Carter, to submit to a urinalysis for reasonable suspicion drug testing. The laboratory rejected the specimens provided by both men because they appeared to have been tampered with. Accordingly, on October 5, 2000, corrections officers requested another sample from both Mr. Hedges and Mr. Carter. As Mr. Carter was providing a urine sample, a corrections officer noticed a small black tube under his penis. The officer strip searched Mr. Carter and found a rubber glove filled with urine connected to a small tube taped to the inside of Mr. Carter's boxer shorts. The corrections officers then asked Mr. Hedges to produce a urine sample, but he refused. A pat down search of Mr. Hedges yielded a sunscreen bottle filled with urine taped to the inside of his crotch. As a result of this incident, Mr. Hedges and Mr. Carter were charged with refusing a drug screen and attempting to alter a drug screen, both Class B disciplinary offenses.[2]

A prison disciplinary board conducted a hearing and sentenced Mr. Hedges to twenty days in disciplinary segregation. The board also ordered him to pay a four dollar fine for the Class B disciplinary conviction and a twenty-five dollar fine for refusing to provide a urine sample for a drug screening test.[3] After Mr. Hedges's internal appeals proved unsuccessful, he filed a pro se petition for common-law writ of certiorari in the Circuit Court for Davidson County.[4] He alleged that the Department had acted arbitrarily by failing to follow its drug testing procedures and by fining him

---

[1]Mr. Hedges's conviction was subsequently affirmed on appeal. *State v. Hedges*, No. 252, 1987 WL 9535 at *1 (Tenn. Crim. App. Apr. 15, 1987), *perm. app. denied* (Tenn. Sept. 4, 1987). His collateral attacks on his convictions have proved unsuccessful. *Hedges v. State,* No. 03C01-9112-CR-00379, 1993 WL 73723, at *1 (Tenn. Crim. App. March 10, 1993), *perm. app. denied* (Tenn. July 12, 1993); *Bickers v. State*, 1998 WL 661528, at *1 (Tenn. Crim. App. Sept. 25, 1998), *perm. app. denied* (Tenn. 1998); *State v. Hedges*, Nos. E1999-01350-CCA-R3-CD, E1999-01323-CCA-R3-CD, 2000 WL 1478569, at *1 (Tenn. Crim. App. Oct. 6, 2000), *perm. app. denied* (Tenn. April 24, 2001).

[2]Under Department of Correction administrative policies and procedures, prison rule infractions fall into three classes: A, B, or C. Class A offenses are the most serious offenses, while Class C offenses are the least serious. Tenn. Dep't of Corr. Policy Index 502.05(VI)(A) (2000).

[3]Tenn. Dep't Corr. Policy No. 506.21(VI)(H)(2) states that "[i]nmates who refuse to provide a specimen shall be charged with the disciplinary infraction 'Refusal of a Drug/Alcohol Screen.' Such refusal shall be considered a Class B offense, and the inmate shall be assessed a fee of $25.00."

[4]Mr. Hedges filed his petition for common law writ of certiorari in the wrong county. In *Hawkins v. Tennessee Dep't of Corr.,* No. M2001-00473-COA-R3-CV, 2002 WL 1677718, at *7-8 (Tenn. Ct. App. July 25, 2002) (No Tenn. R. App. P. 11 application filed), we construed Tenn. Code Ann. § 41-21-803 (1997) to require that a lawsuit for a cause of action accruing while a prisoner is incarcerated must be brought in the county where the facility housing the prisoner is located. Mr. Hedges was housed at the Morgan County Regional Correctional Facility when he filed his petition in the Davidson County Circuit Court challenging the disciplinary proceedings at the Southeast Regional Correctional Facility. Accordingly, it was filed in the wrong court based on our interpretation of Tenn. Code Ann. § 41-21-803. We will not vacate the judgment in this case because Mr. Hedges filed his petition before our decision in *Hawkins* was filed, and neither party apparently raised the application of Tenn. Code Ann. § 41-21-803 either in the trial court or on appeal.

twenty-five dollars for refusing to take a drug test when he had only been convicted of attempting to alter a drug test. Rather than filing the record of the prison disciplinary board's proceedings, the Department filed its customary conclusory Tenn. R. Civ. P. 12.02(6) motion to dismiss.[5] On January 3, 2002, the trial court entered a perfunctory order granting the Department's motion to dismiss "for the reasons set forth in their memorandum."[6] Mr. Hedges has perfected this appeal.

## II.
### THE STANDARD OF REVIEW

We cannot review this appeal using the standards of review normally associated with common-law writs of certiorari because the Department elected not to address Mr. Hedges's petition head on. Instead, as it is so often wont to do, the Department filed a Tenn. R. Civ. P. 12.02(6) motion asserting that Mr. Hedges's petition fails to state a claim upon which relief can be granted. By making this tactical decision, the Department has chosen the tune by which it must now dance.

The sole purpose of a Tenn. R. Civ. P. 12.02(6) motion to dismiss is to test the sufficiency of the complaint, not the strength of the petitioner's evidence. *Doe v. Sundquist,* 2 S.W.3d 919, 922 (Tenn. 1999); *Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A.,* 986 S.W.2d 550, 554 (Tenn. 1999). It requires the courts to review the complaint alone, *Daniel v. Hardin County Gen. Hosp.,* 971 S.W.2d 21, 23 (Tenn. Ct. App. 1997), and to look to the complaint's substance rather than its form. *Kaylor v. Bradley,* 912 S.W.2d 728, 731 (Tenn. Ct. App. 1995). Dismissal under Tenn. R. Civ. P. 12.02(6) is warranted only when the alleged facts will not entitle the petitioner to relief or when the complaint is totally lacking in clarity and specificity. *Dobbs v. Guenther,* 846 S.W.2d 270, 273 (Tenn. Ct. App. 1992).

A Tenn. R. Civ. P. 12.02(6) motion admits the truth of all the relevant and material factual allegations in the complaint but asserts that no cause of action arises from these facts. *Winchester v. Little,* 996 S.W.2d 818, 821-22 (Tenn. Ct. App. 1998); *Smith v. First Union Nat'l Bank,* 958 S.W.2d 113, 115 (Tenn. Ct. App. 1997). Accordingly, courts reviewing a complaint being tested by a Tenn. R. Civ. P. 12.02(6) motion must construe the complaint liberally in favor of the petitioner by taking all factual allegations in the complaint as true, *Stein v. Davidson Hotel,* 945 S.W.2d 714, 716 (Tenn. 1997), and by giving the petitioner the benefit of all the inferences that can be reasonably drawn from the pleaded facts. Robert Banks, Jr. & June F. Entman, *Tennessee Civil Procedure* § 5-

---

[5]The Department's motion simply asserted that Mr. Hedges's petition should be dismissed "pursuant to Tenn. R. Civ. P. 12.02." This motion, like many of the motions filed by the Civil Rights and Claims Division in cases of this sort, fails to comply with the rudimentary requirements of motion practice under the Tennessee Rules of Civil Procedure. Tenn. R. Civ. P. 7.02(1) requires that motions must "state with particularity the grounds therefor." For the purposes of a Tenn. R. Civ. P. 12.02(6) motion, this means that the moving party must state in its motion why the plaintiff has failed to state a claim for which relief can be granted. We have repeatedly reminded the Attorney General that including the grounds for a Tenn. R. Civ. P. 12.02(6) motion in a separate memorandum of law does not comply with Tenn. R. Civ. P. 7.02(1). *See, e.g., Hickman v. Tennessee Bd. of Paroles*, 78 S.W.3d 285, 287 (Tenn. Ct. App. 2001); *Pendleton v. Mills*, 73 S.W.3d 115, 119 n.7 (Tenn. Ct. App. 2001); *Robinson v. Clement*, 65 S.W.3d 632, 635 n.2 (Tenn. Ct. App. 2001). Our suggestions appear to have gone unheeded.

[6]By operation of Tenn. R. App. P. 24(a), the memorandum of law supporting the Department's motion to dismiss has not been included in the appellate record. Accordingly, we have no way to ascertain what the grounds of the Department's motion were.

6(g), at 254 (1999). On appeal from an order granting a Tenn. R. Civ. P. 12.02(6) motion, we must likewise presume that the factual allegations in the complaint are true, and we must review the trial court's legal conclusions regarding the adequacy of the complaint without a presumption of correctness. *Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A.,* 986 S.W.2d at 554; *Stein v. Davidson Hotel,* 945 S.W.2d at 716.

## III.
### THE APPELLATE RECORD

As we have on two prior occasions, we are constrained to comment on the state of the appellate record in this case. Because of the Department's tactical decision not to file the record of the proceedings of the prison disciplinary board, we are faced with the task of reviewing the trial court's denial of Mr. Hedges's petition with less than a complete record of the disciplinary proceedings. The Department's decision, while warranted in narrow circumstances, is discordant with the traditional and customary procedures governing the consideration of petitions for a writ of common-law certiorari. *Horton v. Tennessee Dep't of Corr.,* No. M1999-02798-COA-R3-CV, 2002 WL 31126656, at *2 (Tenn. Ct. App. Sept. 26, 2002) (No Tenn. R. App. P. 11 application filed); *Livingston v. Tennessee Bd. of Paroles*, No. M1999-01138-COA-R3-CV, 2001 WL 747643, at *5 (Tenn. Ct. App. July 5, 2001) (No Tenn. R. App. P. 11 application filed). Its practical effect in this case and others similar to it is to waste the time and resources of the trial and appellate courts.

Had the Department simply filed the record of the prison disciplinary proceeding, both the trial court and this court would have been able to determine whether Mr. Hedges is entitled to the relief he seeks and to rule finally and dispositively on his claims. Without the record, we are left with only the allegations in Mr. Hedges's petition and the documents he decided to attach to his petition. Because the Department filed a motion to dismiss without filing the board's records, we must also presume that the allegations in Mr. Hedges's petition are true – no matter how far-fetched they may appear on their face. Thus, while the board's records may very well demonstrate conclusively that Mr. Hedges was convicted for refusing to take a drug test, the Department's tactics require us to presume that he was not. Why the Department would want to paint itself into this procedural corner is beyond us.

## IV.
### THE DEPARTMENT'S ADHERENCE TO ITS DRUG TESTING POLICIES

Mr. Hedges asserts that he is entitled to judicial relief because the Department's second request for a urine sample was not consistent with the Department's published drug testing policy. He asserts that the Department effectively amended its policy without notifying him when it decided to require a second urine sample after the laboratory rejected the first sample because of suspicions that it had been tampered with. We find no legal merit in this argument for two reasons.

First, Tenn. Dep't Corr. Policy No. 506.21(VI)(A)(8)(a) lists five grounds for conducting a "reasonable suspicion drug or alcohol screening." Among these grounds are (1) the receipt of confidential information from a reliable source and (2) unusual actions or behavior by the prisoner. Receiving information from the testing laboratory that a urine sample has been tampered with

amounts to information from a reliable source that a prisoner suspected of drug or alcohol use has engaged in unusual actions or behavior – that behavior being tampering with the test.

Second, notwithstanding the information received from the testing laboratory, the Department could still rely on the information that prompted its decision to request the first urine test. Mr. Hedges has not asserted that the Department lacked reasonable suspicion to request the first urine test. Accordingly, we may presume that the Department had sufficient information to warrant its first request for a urine sample. This information would likewise have been sufficient to justify the Department's second request for a urine sample.

## V.
### THE TWENTY-FIVE DOLLAR FINE FOR REFUSING A DRUG TEST

Mr. Hedges also asserts that his petition states a claim that would warrant relief pursuant to a common-law writ of certiorari. He asserts that by fining him twenty-five dollars for refusing to take a drug test when he was convicted only of attempting to alter a drug test violated the Department's Uniform Disciplinary Procedures, as well as his due process rights. Instead of addressing this assertion head on, the Department, relying on *Sandin v. Conner*, 515 U.S. 472, 115 S. Ct. 2293 (1995), asserts that Mr. Hedges failed to state a claim upon which relief can be granted. In effect, the Department argues that even if it did fine Mr. Hedges without convicting him of the underlying offense, Mr. Hedges is not entitled to judicial relief because the punishment he received is not serious enough to warrant the courts' attention.

To the extent that Mr. Hedges is basing his arbitrariness and illegality claim on alleged procedural due process violations, he must first allege that he has been deprived of an interest entitled to protection under the Due Process Clause.[7] *Rowe v. Board of Educ.*, 938 S.W.2d 351, 354 (Tenn. 1996); *Armstrong v. Department of Veterans Affairs*, 959 S.W.2d 595, 597-98 (Tenn. Ct. App. 1997). Disciplinary proceedings are an ordinary part of prison life. The United States Supreme Court has held that a prisoner's liberty interests are implicated only when a disciplinary action imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," *Sandin v. Conner*, 515 U.S. at 486, 115 S.Ct. at 2300-01. Specifically, *Sandin v. Conner* involved a prisoner placed in punitive segregation for thirty days, which the Court concluded "did not work a major disruption in his environment." *Sandin v. Conner*, 515 U.S. at 486, 115 S. Ct. at 2300.

However, this court recently held that the rationale of *Sandin v. Conner* does not apply to a prisoner's due process claims predicated on the loss of a property interest. *Jeffries v. Tennessee Dep't of Corr.*, No. M2001-02300-COA-R3-CV, ____ WL ____, at *___ (Tenn. Ct. App. Dec. 31, 2002). We also held that state prisoners have a property interest in the funds in their prison trust fund accounts, and the due process clause protects that property interest. *Jeffries v. Tennessee Dep't of Corr.*, ____ WL ____, at *___. Accordingly, we concluded that the Department must accord prisoners all the procedural due process rights essential to a fair hearing granted them in its Uniform Disciplinary Procedures when it undertakes to levy a disciplinary fine against their trust fund

---

[7]U.S. Const. amend. XIV, § 1.

accounts. *Jeffries v. Tennessee Dep't of Corr.*, ____ WL ____, at *___. Based on our holding in *Jeffries v. Tennessee Dep't of Corr.*, the Department's reliance on *Sandin v. Conner* to shield Mr. Hedges's twenty-five dollar fine from judicial review is misplaced.

We have already noted that the Department's Tenn. R. Civ. P. 12.02(6) motion forces us to presume that Mr. Hedges's assertion that he was not convicted of refusing to take a drug screening test is true. That being the case, the Department had no basis for fining him twenty-five dollars. According to Tenn. Dep't Corr. Policy No. 506.21(VI)(H)(2), this fine can only be assessed against prisoners who refuse to submit to an alcohol or drug screening test. While twenty-five dollars may not be a great amount of money outside the walls, it is significant to a prisoner who must use it to pay for various fees, commissary items, copies, postage, and other expenses. Without a basis for imposing the fine, the Department acted arbitrarily and capriciously and violated Mr. Hedges's due process rights when it ordered him to pay the fine. Accordingly, Mr. Hedges's allegation that he was fined for an offense of which he was not convicted states a claim for relief.

The Department's final cart-before-the-horse argument is that Mr. Hedges is not entitled to relief because he admitted later in his certiorari petition that he had refused to take the second drug screening test. This argument misses the point. By virtue of its own Uniform Disciplinary Procedures, the Department may not punish a prisoner for a disciplinary infraction without first affording the prisoner a "fair and impartial disciplinary proceeding." Tenn. Dep't Corr. Policy No. 502.01(V).[8] Prisoners are presumed innocent of the disciplinary charges against them and cannot be found guilty until the Department proves the charge by a preponderance of the evidence. Tenn. Dep't Corr. Policy No. 502.01(VI)(E)(2)(I)(1). Only after a prisoner is found guilty of a disciplinary offense can the prison disciplinary board sentence the prisoner to disciplinary segregation, fine the prisoner pursuant to policy guidelines, or both. Tenn. Dep't Corr. Policy Nos. 502.01(VI)(E)(3)(a)(6), 502.01(VI)(E)(3)(a)(13), and 502.01(VI)(E)(3)(a)(14).

Imposing a fine on a prisoner for a disciplinary offense without first finding the prisoner guilty of the offense is not a "minor deviation" from the Uniform Disciplinary Procedures. It is arbitrary conduct that strikes at the heart of the fairness of the disciplinary proceeding. If Mr. Hedges was not found guilty of refusing a drug screen by a preponderance of the evidence at a disciplinary board hearing, the Department violated its own policy and the tenants of fairness by fining him twenty-five dollars for refusing a drug screen.

---

[8]Tenn. Dep't Corr. Policy No. 502.01(V) states as follows:

> Fair and impartial disciplinary proceedings will be administered against inmates charged with disciplinary infractions. The procedures contained herein alone shall govern the disciplinary process. This policy is not intended to create any additional due process guarantees for inmates beyond those which are constitutionally required. Minor deviations from the procedures set forth below shall not be grounds for dismissal of a disciplinary offense unless the inmate is able to show some prejudice as a result and the error would have affected the disposition of the case.

## VI.

We affirm the dismissal of the portion of Mr. Hedges's petition based on the Department's adherence to its drug testing policies. We reverse the dismissal of the portion of the petition challenging the twenty-five dollar fine and remand the case to the trial court for further proceedings consistent with this opinion.[9] We tax the costs of this appeal to the Tennessee Department of Correction.

_____
WILLIAM C. KOCH, JR., JUDGE

---

[9]Once this case is remanded, we presume that the trial court will direct the Department to file a record of Mr. Hedges's disciplinary proceeding. If the record demonstrates that Mr. Hedges was convicted of refusing to take a drug screening test, the trial court may dismiss Mr. Hedges's petition. If, however, the record substantiates Mr. Hedges's claim that he was not found guilty of refusing to take a drug screening test, the trial court must vacate the twenty-five dollar fine. Nothing in this opinion, however, will prevent the Department from convening a hearing with regard to the charge of refusing to take a drug screening test. Should the Department conduct another hearing, Mr. Hedges's factual statements in his petition for common-law writ of certiorari can be viewed as admissions.