**John Rex LISLE; Jason Beddoe; and Mike Mann, Plaintiffs–Appellants,**

v.

**METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE; and Emmett Turner, Defendants–Appellees.**

Nos. 01–6049, 02–5706.

United States Court of Appeals, Sixth Circuit.

July 9, 2003.

784

Before BOGGS and NORRIS, Circuit Judges; and BELL, Chief District Judge.[*]

PER CURIAM.

Police officers John Rex Lisle, Jason Beddoe, and Mike Mann (the "officers") appeal the district court's dismissal of their action against their employer, the Metropolitan Government of Nashville and Davidson County, Tennessee (the "city"), and its chief of police, Emmett Turner (the "chief"), for failure to state a claim upon which relief can be granted. The city had transferred the officers from positions as patrol officers to clerical postings in the police communication department, in response to newspaper reports of misconduct on the part of the officers. The city had also publicly made unfavorable comments about the officers. The officers sued the city and the chief under 42 U.S.C. § 1983 for deprivation of their due process rights to property and liberty. The district court found these complaints to be legally insufficient, dismissed the action, and also awarded attorney's fees to the defendants. We affirm the district court's judgment on the merits but reverse and remand with respect to the attorney's fees.

* The Honorable Robert Holmes Bell, Chief United States District Judge for the Western District of Michigan, sitting by designation.

## I

The officers were civil service employees of the city, classified as patrol officers. On October 20, 1999, the officers were interviewed by the department's internal affairs unit, regarding allegations that they had harassed Hispanic motorists at road blocks. The following day, a local paper, the Nashville Scene, ran an article entitled "Above the Law—Part 1," detailing these accusations. A week later, the paper continued with an article entitled "Above the Law—Part 2," accusing plaintiff Mann in particular of the same conduct. That same day, all three officers were informed that they had been "disempowered" and transferred from patrol duty to clerical tasks in the police communications department, which ordinarily was staffed almost exclusively by civilian employees. This transfer entailed the officers' surrendering such incidents of their patrol duty as badges, uniforms, weapons, cars, and other equipment, but no reduction in salary. The defendants also publicly stated that the officers were under investigation for the complaints raised in the newspaper articles. The officers complained to the chief that their disempowerment was in violation of departmental regulations and their due process rights, but without result. The following June, almost a year after the alleged incidents, the chief informed the officers that an investigation of their conduct had concluded and no further discipline would be forthcoming, but did not return them to their previous assignments. None of the officers were able to find employment as patrol officers at any comparable department. Plaintiff Lisle resigned effective November 23, 2000.

On October 5, 2000, the officers sued the city and the chief in his individual capacity

in the United States District Court for the Middle District of Tennessee for deprivation of their constitutional rights, in violation of 42 U.S.C. § 1983. The complaint contended that defendants had, in violation of the Due Process Clause, deprived the officers of their property interest in their positions as patrol officers ("property claim") and of their liberty interest in their reputations by making disparaging public statements ("liberty claim"). The complaint also summarily claimed, but did not particularize, a First Amendment violation and a deprivation of life, in violation of the officers' substantive due process rights ("spurious claims"). The defendants filed a motion for judgment on the pleadings, under Fed.R.Civ.P. 12(c), requesting dismissal of the spurious and liberty claims for failure to state a claim upon which relief may be granted. In response, the officers filed a motion for partial summary judgment, claiming that they were entitled to judgment as a matter of law on their property claim. The district court recognized that the officers had withdrawn the spurious claims as without merit, dismissed the property and liberty claims for failure to state a claim and held that the chief enjoyed qualified immunity. However, in rendering judgment on the pleadings, the district court did take notice of materials outside the complaint and the answer. The officers filed and the district court rejected a motion for reconsideration, pursuant to Fed.R.Civ.P. 59. The officers timely appealed.

Subsequently, the defendants filed a motion for attorney's fees and expenses as prevailing parties under 42 U.S.C. § 1988. The district court granted that motion and ordered the officers' counsel to pay a total of $43,859.35. The officers and their counsel timely appealed that order as well. Before this court now are the appeals of the judgment and the fee award.

## II

The officers claim deprivation of a constitutionally protected property interest in not being transferred from positions as patrol officers to clerical positions in the communications department. Under the Fifth Amendment, no person is to be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). "Such interests do not arise from the Constitution itself, but rather, 'are created and their dimensions ... defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" *Woolsey v. Hunt,* 932 F.2d 555, 563 (6th Cir.1991) (quoting *Roth,* 408 U.S. at 577). The independent source may be a statute, policy, practice, regulation, or guideline. *See Bishop v. Wood,* 426 U.S. 341, 347, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). If such interest is recognized by state law, then the employee possesses a property interest of which the state employer cannot deprive the employee without providing due process. *See Bishop,* 426 U.S. at 344. Because, for purposes of review here, the officers received no or practically no process at all, their property claim hinges on whether anything in Tennessee statute, common law, or regulation creates an interest in their assignment as patrol officers.

█ The officers rightly cite the Tennessee civil service statutes as creating a property interest in civil service employees. "Employees who have successfully completed their probationary period have

a 'property right' to their positions. Therefore, no suspension, demotion, dismissal, or any other action which deprives a regular employee of such employee's 'property right' will become effective until minimum due process is provided as outlined below." Tenn.Code Ann. § 8–30–331. "After the probationary period [of six months], each employee shall become a member of the classified service." JA 17 (Nashville Charter Article 12). Tennessee courts have interpreted the meaning of "any other action which deprives" employees of their property rights. In *Armstrong v. Tennessee Department of Veterans Affairs*, 959 S.W.2d 595 (Tenn.Ct.App. 1997), the state had attempted to reclassify plaintiff's position from the regular service to the executive service. *Id.* at 598. As the civil service protection did not apply to positions in the executive service, this would have deprived the plaintiff of the property right not to be suspended, demoted, or dismissed. Hence, the court held this reclassification to fall within the any-other-action exception. *Ibid.*

In the present case, the officers were reassigned, not suspended, demoted, or dismissed. Nor were they made subject to "any other action which deprives a regular employee of such employee's 'property right.'" Even after the transfer, they would continue to enjoy the protection against suspension, demotion, or dismissal. As the general Tennessee civil service statute does not create a property interest against reassignment, they were not deprived of a property right protected by that statute.

▮ Tennessee also has a civil service statute specific to police officers. "Before any dismissal, demotion, suspension without pay or transfer for punitive reasons may be imposed, the following must be complied with: [notification, opportunity for response, assistance of counsel]." Tenn.Code Ann. § 38–8–304. While the

officers could contend that they were transferred for punitive reasons and therefore were within the statute's ambit, this statute only provides a default rule that can be overridden by local regulation. "This part shall apply only to those agencies that now provide a property interest in employment for their police officers and that have no other established procedures for dealing with the dismissal, demotion, suspension, or transfer for punitive reasons of police officers." Tenn.Code Ann. § 38–8–309. Because Nashville, as detailed below, does provide specific procedures, the statute is inapplicable.

▮ Tennessee common law does not create a property interest against reassignments in the officers. "Tennessee has long recognized the doctrine of employment at will, with the mutual right of either party to terminate such a relationship with or without cause." *Brown v. City of Niota*, 214 F.3d 718, 720 (6th Cir. 2000) (citing *Chism v. Mid–South Milling Co.*, 762 S.W.2d 552, 555 (Tenn.1988)). Where either side can terminate a relationship at will, neither party can have a property interest enforceable against the other in the continuance of the relationship. If nothing in the common law will prevent the city from terminating the officers, neither will it prevent the city from exercising such lesser options as reassignment to other duties.

▮ Nashville civil service regulations do not create a property interest against reassignment in the officers. The Nashville Charter provides some protection for civil service employees: "No employee in the classified service may be terminated, or suspended from service, or demoted in pay grade, except for cause and after a hearing before the department head or other appointing authority, with prior reasonable notice, in writing, of the proposed action and the reasons therefore...." JA

17. The officers were not terminated, suspended, or demoted. Hence the Charter does not help their case. Next, the officers point to the following language in the Nashville Civil Service Rules: "Transfers within a department are considered job assignments, as long as the employee remains in their [sic] classification and the work involved is similar in nature and requires similar skills and abilities." JA 192. But this language merely suggests that the officers were subjected to an intra-departmental transfer, rather than a mere job assignment. As the following sentence in the Rules makes clear, this is a distinction without a difference, because intra-departmental transfers, regardless of whether they are mere job assignments, as "are at the discretion of the Appointing Authority. . . ." Finally, the officers refer to the General Order of police personnel matters issued by the department: "An employee who is reassigned pending completion of an investigation or formal disciplinary action will be assigned only to tasks which are appropriate to his/her classification." However, as the officer own complaint makes clear, they were not temporarily reassigned pending an investigation. It is unclear whether there ever even was a formal investigation and the officer state that they were not returned to their original positions following the conclusion of such investigation as there was. Rather, the chief appears to have exercised a general power to make permanent administrative reassignments. As the General Order states,

> [a]dministrative changes may be made in an employee's permanent assignment by the Chief of Police or with the approval of the Chief of Police. . . . These changes would enhance the efficient and effective operation of the department. In addition, administrative changes may serve to ensure the safety of the employee, the public, or for disciplinary purposes.

Therefore, nothing in the administrative regulations creates a property right in the officers which was violated here.

■ Some arguments raised by the parties regarding the property claim can be disposed of summarily. The officers contend that because the city conceded in its answer that they enjoyed a property right in their employment, this issue is conceded. But the city merely admitted, as is undisputable under the Tennessee civil service statute, that the officers had a property interest in not being terminated; there was no concession of a property right against transfers. The officers also argue that they had a property right in their assignments because they signed a police officer's employment contract. While the factual predicate exists, the legal consequence does not follow. The mere name of a position used in the contract does not create a property interest. Moreover, the position given in the contract, "Police Officer Trainee," is not one to which the officers seek, or presumably even would accept, reinstatement.

For these reasons we conclude that the officers' property interests were not violated, as we and our sister courts have done in similar situations. *Cf. Brown v. City of Niota,* 214 F.3d 718, 720 (6th Cir.2000) (finding no property interest in Tennessee law against police officer's termination, notwithstanding language in employee manual); *Moore v. Otero,* 557 F.2d 435, 437 (5th Cir.1977) (finding no property interest in Florida law against police corporal's demotion to the lower rank of patrolman); *Hughes v. Whitmer,* 714 F.2d 1407, 1414 (8th Cir.1983) (finding no property interest in Missouri law against police trooper's reassignment to a different geographical area).

## III

■ The conclusion that the officers were not deprived of a constitutionally pro-

788

tected property interest does not end our inquiry, as the officers also alleged a related deprivation of a liberty interest. "[A] person's reputation, good name, honor, and integrity are among the liberty interests protected by the due process clause of the fourteenth amendment." *Chilingirian v. Boris*, 882 F.2d 200, 205 (6th Cir.1989) (citing *Roth*, 408 U.S. at 573). To establish a deprivation of a protected liberty interest in the employment context, a plaintiff must demonstrate stigmatizing governmental action that so negatively affects his or her reputation that it effectively forecloses the opportunity to practice a chosen profession. *See Roth*, 408 U.S. at 573–74. "[W]hen a state fires an employee for stated reasons likely to make him all but unemployable in the future, by marking him as one who lost his job because of dishonesty or other job-related moral turpitude, the consequences are so nearly those of formally excluding him from his occupation that the law treats the state's action the same way, and insists that due process be provided." *Lawson v. Sheriff of Tippecanoe County*, 725 F.2d 1136, 1138 (7th Cir.1984) (Posner, J.); *see also Joelson v. United States*, 86 F.3d 1413, 1420 (6th Cir.1996); *see generally Codd v. Velger*, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977).

The protection afforded by the liberty clause is not coextensive with that afforded by the property clause. A liberty claim may exist even where no property claim exists, as in the case of a terminated at-will employee unprotected by any understanding, regulation, or statute. Conversely, while a property claim need not allege any unfavorable public statements by the employer, a liberty claim must. However, "[d]efamation, by itself, is a tort actionable under the laws of most States, but not a constitutional deprivation." *Siegert v. Gilley*, 500 U.S. 226, 233, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991).

[T]he interest in reputation alone which respondent seeks to vindicate in this action in federal court is quite different from the "liberty" or "property" recognized in those decisions.... And any harm or injury to that interest, even where as here inflicted by an officer of the State, does not result in a deprivation of any "liberty" or "property" recognized by state or federal law, nor has it worked any change of respondent's status as theretofore recognized under the State's laws.

*Paul v. Davis*, 424 U.S. 693, 711–12, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).

In every case upholding a liberty claim, termination was a necessary pre-condition. "A name-clearing hearing is required only if an employer creates a false and defamatory impression about a particular employee *in connection with his termination.*" (emphasis added) *Chilingirian*, 882 F.2d at 205 (citing *Codd v. Velger*, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977)). "[T]here is no deprivation of liberty if the employee is not fired. He cannot in such a case complain of exclusion from his occupation." *Lawson*, 725 F.2d at 1139 (citing *Paul*, 424 U.S. at 710, and *Moore*, 557 F.2d at 438). "The facts alleged by [plaintiff] cannot ... be held to state a claim for denial of a constitutional right [because] [t]he alleged defamation was not uttered incident to the termination of [plaintiff's] employment." *Siegert v. Giller*, 500 U.S. 226, 233–34, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). "A liberty interest in one's reputation is implicated ... only when ... the stigmatizing statements [are] made in conjunction with the plaintiff's termination from employment." *Ludwig v. Bd. of Trs.*, 123 F.3d 404, 409 (6th Cir.1997) (citing *Paul*, 424 U.S. at 709–10). Where "the publication complained of, even if defamatory, was not accompanied by the deprivation of any more tangible interest such as continued employment, the publication did

not deprive the plaintiffs of a liberty interest." *Ferencz v. Hairston*, 119 F.3d 1244, 1249 (6th Cir.1997).

To avoid the conclusion that they were not deprived of a liberty interest because they were not terminated, the officers point only to scattered dicta in opinions not binding on this court: "To be demoted from a responsible and well-paid job to a menial and low-paying one is to be as effectively excluded from one's trade or calling as by being thrown out on the street. Indeed the consequences are very nearly identical, since a person who loses a responsible and well-paid job will usually be able to find a menial and lowpaying job with another employer." *Lawson*, 725 F.2d at 1139. *See also Gustafson v. Jones*, 117 F.3d 1015, 1020 (7th Cir.1997) (citing a transfer from a police department's prestigious Tactical Enforcement Unit "to an office file clerk or the equivalent" as an example of a reassignment that could violate a liberty interest under *Lawson*). *But see Felder v. Oliverio*, 1996 WL 1089867 (N.D.Ind.1996) (concluding that a police chief's demotion back to the ranks was insufficiently "degrading" as to form the basis of a liberty claim under *Lawson*); *Klug v. Chicago School Reform Bd. of Trs.*, 197 F.3d 853 (7th Cir.1999) (finding the position of teacher at an elementary school not so far beneath that of dean of freshman students at a high school as to form the basis of a liberty claim under *Lawson*). "If [plaintiff] had been transferred from corporal's duties to janitorial duties, his loss of status *might* present the type of loss of tangible interest connected with stigmatizing state action that, under *Paul*, could give rise to a liberty interest." *Moore*, 557 F.2d at 437 n. 11. (emphasis added) "An appointing authority may not give lip service to the law by transferring a classified employee to a new position with a job title and description which purports to conform with the requirements of [the state civil service statute], but which, in fact and in practice, is a reduction in position." *City of Paducah v. Moore*, 662 S.W.2d 491, 494 (Ky.Ct.App.1984) (quoting and adopting *Chiero v. Bureau of Motor Vehicles*, 55 Ohio Misc. 22, 381 N.E.2d 219, 221–22 (1977)).

We today decline the opportunity to follow the Seventh Circuit and extend our precedents to constitutionalize the job assignment policies of public employers throughout this jurisdiction. Not only are our precedents in this matter unambiguously clear, to hold otherwise would involve the courts in an nearly standardless review of state and municipal reassignments, whenever word of them escapes to the public. Any such reassignment would be held to require constitutional process if the new job was more "menial" than the one previous held, was regarded as having "a lower status" by some unspecified observer, was degrading to the previous holder of a more lofty position (though presumably not to those who always toiled in it), or was sufficiently "far beneath" the earlier position. To recite these guideposts is to demonstrate their subjective nature and dependence on the idiosyncratic temperament of the affected employee. We therefore hold that where a state employee was not terminated incident to the unfavorable statement, there was no violation of the liberty interest protected by the Due Process Clauses. As the officers here were not, their liberty interests were not violated.

## IV

■ The officers challenge the district court's holding that the chief enjoyed qualified immunity. "In civil suits for money damages, government officials are entitled to qualified immunity for discretionary acts that do 'not violate clearly established [federal] statutory or constitutional rights of which a reasonable person would have

790

known.'" *Goad v. Mitchell,* 297 F.3d 497, 501 (6th Cir.2002) (quoting *Anderson v. Creighton,* 483 U.S. 635, 638–39, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), and *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). "To determine if qualified immunity attaches, the Supreme Court has delineated a two-part, sequential analysis." *Goad,* 297 F.3d at 501 (citing *Saucier v. Katz,* 533 U.S. 194, 200–01, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). "First, we inquire whether, '[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?'" *Goad,* 297 F.3d at 501 (quoting *Saucier,* 533 U.S. at 201). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier,* 533 U.S. at 201. Having not found any constitutional violation, we must answer the qualified immunity question in the affirmative.

**V**

■ The officers challenged the dismissal in their motion for reconsideration on the grounds that it had taken into account materials outside the pleadings. Prior to the judgment, the defendants had moved for dismissal under Fed.R.Civ.P. 12(c) on the liberty and spurious claims and the officers had moved for summary judgment on the property claim. The officers concede the dismissal of the spurious claims, but dispute the dismissal of the remaining claims. While the judgment below was styled a dismissal for failure to state a claim, it did take into consideration matters outside the pleadings, converting it into summary judgment. Fed.R.Civ.P. 12(c) ("If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as

provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."); *see also Local 267 v. Ohio Carpenters Health & Welfare Fund,* 926 F.2d 550, 558 (6th Cir.1991) ("As an appellate court, we are not bound to adhere to the label attached to the trial court's disposition of the case and may treat it as a summary judgment.").

■ Conversion to summary judgment opens up the judgment to two attacks by the officers. First, the officers contend that they were not given sufficient opportunity to challenge summary judgment on the facts. However, the court allowed six months between filing of the motion for dismissal and its grant. During that period the officers found time to file their own motion for summary judgment. The summary judgment finally granted was based upon the city's arguments and allegations in its brief. This gave the officers ample time and opportunity to challenge any inadequacies in the factual basis for judgment. In addition, in their post-judgment motion for reconsideration, the officers did supplement the record with numerous affidavits. Taking this additional evidence as true and an accurate reflection of the underlying facts, as we should do here, does not alter the legal conclusion reached. Therefore we conclude that the officers had an opportunity to challenge the converted summary judgment motion and that, even had they been deprived of this opportunity, they were not prejudiced, rendering the error harmless. *See Local 267,* 926 F.2d at 558 ("To show that it was prejudiced by the trial court's summary judgment proceedings, [the non-moving party] must show that it was prevented from conducting additional relevant discovery or filing supplemental material in opposition to summary judgment.").

Second, the officers argue that summary judgment on the property claim was inappropriate because the defendants had not asked for judgment on it. However, the officers had moved for summary judgment on the property claim and district courts are authorized to grant summary judgment to the non-moving party. *See In re Century Offshore Mgmt. Corp.*, 119 F.3d 409, 412 (6th Cir.1997).

## VI

The district court awarded attorney's fees to the defendants under 42 U.S.C. § 1988. "In any action or proceeding to enforce a provision of [42 U.S.C. § 1983], the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs...." 42 U.S.C. § 1988(b). The text of § 1988 appears to impose a discretionary version of the English rule in § 1983 cases, but subsequent case law has greatly limited its scope. "An award of attorney's fees against a losing plaintiff in a civil rights action is an extreme sanction, and must be limited to truly egregious cases of misconduct." *Jones v. The Continental Corp.*, 789 F.2d 1225, 1232 (6th Cir.1986). "[A] plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). While a finding of subjective bad faith on part of the plaintiff is not necessary, "if a plaintiff is found to have brought or continued such a claim in bad faith, there will be an even stronger basis for charging him with the attorney's fees incurred by the defense." *Ibid.* "In applying these criteria, it is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation.... Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit." *Id.* at 421. *See also Tarter v. Raybuck*, 742 F.2d 977, 986 (6th Cir.1984) (applying *Christiansburg* standard to § 1988). "A sanction is generally improper where a successful motion could have avoided any additional legal expenses by defendants." *In re Ruben*, 825 F.2d 977, 988 (6th Cir.1987). In the alternative, the district court also supported the award of attorney's fees under 28 U.S.C. § 1927. "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. However, "[a]n attorney is liable under § 1927 solely for excessive costs resulting from the violative conduct." *Ridder v. City of Springfield*, 109 F.3d 288, 299 (6th Cir.1997). Under either section, "[t]he standard of review on appeal is whether the district court abused its discretion in awarding attorney fees." *Tarter*, 742 F.2d at 984; *see Runfola & Associates, Inc. v. Spectrum Reporting II, Inc.*, 88 F.3d 368, 375 (6th Cir.1996).

Under this standard, the award of the attorney's fees expended to defend against the liberty and property claims can not be upheld under either § 1988 or § 1927. Even though we today uphold the dismissal of these claims, they were not frivolous, unreasonable, groundless, or vexatious. The property claim failed because state law and regulation did not provide for a property interest in the officers' status as

patrol officers. However, the conduct which the officers had been made subject to was not too far from the contours of their actual, protected property interest. The liberty claim failed because we do not recognize a violation in the absence of a termination. However, statements by learned judges on other courts have moved a contrary holding at least into the realm of the possible. Under these circumstances, we cannot place this action into that category of cases which not only should not have been brought, but which the plaintiff should have known not to bring. Therefore, we reverse the award of attorney's fees with respect to fees accrued defending against the liberty and property claims.

■ Finally, with respect to the spurious claims, we agree with the court below that they should not have been brought. These claims were obviously baseless. However, the plaintiffs did not press these claims after the initial appearance in the complaint and withdrew them soon thereafter. Hence they are unlikely to have imposed significant cost or inconvenience on either the defendants or the courts. As the court below did not disentangle these costs from the cost of defending the liberty and property claims, we reverse and remand. Should the defendants be able to prove costs associated specifically with the defense against the spurious claims, these costs only may be awarded.

### VII

We **AFFIRM** the district court's judgment on the merits of the underlying action, but **REVERSE** and **REMAND** the award of attorney's fees.