IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 1, 2016 Session

## TENNESSEE DEPARTMENT OF CORRECTION v. DAVID PRESSLEY

**Appeal from the Chancery Court for Davidson County**
**No. 141380I     Claudia Bonnyman, Chancellor**

_____

**No. M2015-00902-COA-R3-CV – Filed April 14, 2016**
_____

Employee of the Tennessee Department of Correction filed an administrative appeal challenging the termination of his employment. The board of appeals reduced the termination to a fourteen-day suspension. On appeal to the trial court, the chancery court ruled that the burden of proof was improperly allocated to the Tennessee Department of Correction in the hearing before the board of appeals.  We reverse the decision of the chancery court and conclude that the board of appeals properly allocated the burden to the Tennessee Department of Correction. We further conclude that no substantial and material evidence in the record exists to support the board of appeals' finding that the employee committed negligence in the performance of his duties. We also reverse the board of appeals' decision denying the employee's request for attorney's fees in the prosecution of his appeal to the board of appeals and remand to the board of appeals for a determination of those fees.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded

J. STEVEN STAFFORD, P.J.,W.S., delivered the opinion of the Court, in which ARNOLD B. GOLDIN, and KENNY ARMSTRONG, JJ., joined.

Frank J. Scanlon and Samuel P. Helmbrecht, Nashville, Tennessee, for the appellant, David Pressley.

Bryce Coatney, Nashville, Tennessee, for the appellee, Tennessee Department of Correction.

# OPINION

## Background

Respondent/Appellant David Pressley was employed by Petitioner/Appellee Tennessee Department of Correction ("TDOC" or "the State") since 2011 as a correctional officer at the Morgan County Correctional Complex ("the prison"). On January 8, 2014, Mr. Pressley received a letter from the prison warden informing him of his dismissal.[1] The letter alleged that overnight on January 6–7, 2014, Mr. Pressley allowed inmates to pilfer food from the prison kitchen while he was supervising the cleaning of the prison kitchen and dining room, as shown by surveillance tape. In addition, the letter alleged that Mr. Pressley wrongly entered a secured food storage area and broke a tamper seal securing the area without filing an incident report.[2] According to the warden, this behavior violated "Morgan County Correctional Complex Post Orders, For Post Assignment: Food Service/Dining Room – Security" ("Post Orders") and Department of Human Resources Rules pertaining to incompetence and negligence. Accordingly, the warden stated that Mr. Pressley's employment would be terminated effective January 17, 2014. The letter further indicated that as a preferred service employee, Mr. Pressley had the right to file a written complaint challenging his dismissal.

Pursuant to the Tennessee Excellence, Accountability, and Management Act of 2012 ("TEAM Act"), discussed in detail *infra*, Mr. Pressley initiated Step I review challenging his dismissal by filing a complaint with the Commissioner of TDOC. The complaint specifically alleged that "[t]he department did not have cause to take such action." By letter dated February 3, 2014, however, the Commissioner of TDOC upheld the termination of Mr. Pressley's employment. On or about February 12, 2014, Mr. Pressley filed a request for a Step II review. On March 10, 2014, the Commissioner of the Department of Human Resources upheld the dismissal, finding no "violation by the Department [of Correction] due to your failure to demonstrate how the Department [of Correction] violated [Tennessee Code Annotated Section 8-30-316, the appeal procedures statute]."

Mr. Pressley then initiated a Step III appeal with the board of appeals, arguing that there was no cause for termination and that the punishment was too severe. In the course of the appeal, the Chief Administrative Law Judge filed an order indicating that the burden of proof would be assigned to TDOC pursuant to Tenn. R. & Regs. 1360-04-01-.02(3) & (7) of the Uniform Rules of Procedure for Hearing Contested Cases before Administrative Agencies. The letter indicated that if either party wished to contest the determination regarding the burden, it could do so by filing a written brief and

---

[1] The letter indicated that Mr. Pressley had been orally informed of the warden's decision to dismiss him earlier on January 8, 2014.

[2] According to the testimony, the seal on the area is in the nature of a "zip-tie."

memorandum. TDOC filed a written brief and memorandum, arguing that the burden should be placed upon Mr. Pressley because he was the moving party. Mr. Pressley responded in opposition. An administrative law judge ("ALJ") ruled at a pre-hearing conference that the burden issue would be decided by the ALJ who was ultimately assigned to hear the case.

The case proceeded to a contested hearing on June 23 and August 8, 2015. During the hearing, the ALJ upheld the prior order assigning the burden of proof to TDOC. The State presented testimony from the prison warden, David Sexton; the prison internal affairs investigator, Lieutenant Shawn Phillips; and the prison food service manager, Anna Cannon, concerning the allegations against Mr. Pressley. In addition, the State relied upon surveillance video showing Mr. Pressley supervising the inmates while they removed food from the secure food storage area. According to the State's witnesses, Mr. Pressley allowed the four inmates that he was supervising to take as much as $5,000.00 worth of food from the prison's secure food storage area during the third shift on January 6, 2014. Mr. Pressley then allowed the inmates to cook the food and remove it from the kitchen and dining room area, taking the food back to their cells. Lieutenant Phillips testified that the purpose of the theft was to sell the food to other inmates. Lieutenant Phillips alluded to the fact that contraband was later found in the inmates' cells, but did not elaborate as to the identity of the inmates, specifically what was removed from the secure food storage area, when the searches of the inmates took place, or specifically what contraband was found in the inmates' cells.

Ms. Cannon testified that there should have been no need to enter the secure food storage area on the night of January 6, 2014 to obtain more food to feed third shift staff. According to Ms. Cannon, second shift food service staff actually prepared the meal for third shift, and the meal was left in heating boxes to be distributed at the appropriate time. In the unlikely event that more food was needed, however, Ms. Cannon testified that an officer or inmate would have been required to break a seal on the secure food storage area to gain entry. Indeed, Ms. Cannon stated that prison staff noted that no seal was on the food storage area on the morning of January 7, 2014.

Warden Sexton likewise testified that it was unlikely that third shift kitchen staff was required to prepare food for the third shift meal, as that preparation should have been done by the second shift food service staff. Warden Sexton also testified that Mr. Pressley filed no report concerning his entry into the secure food storage area or the necessity to break a seal to do so. According to Warden Sexton, the proper procedure when a correctional officer enters a secure food storage area to remove food, regardless of whether the correctional officer received permission for entry, "an incident report has to be made showing exactly what [is] remov[ed] from the area so that they can deduct that or adjust their inventory." To support this procedure, Warden Sexton cited the Post Orders, discussed in detail, *infra*.

3

The testimony of two correctional officers contradicted Lieutenant Phillips's testimony wherein he indicated that the inmates were allowed to take contraband food back to their cells overnight on January 6, 2014. According to these correctional officers, the inmates were thoroughly searched upon returning to their housing units and no contraband items of any kind were found. Both correctional officers testified that although they are on the video surveillance of the events at issue in this case and were on duty the night of the incident, no internal affairs investigators ever interviewed them regarding the night in question.

Mr. Pressley testified that he specifically called his supervisor Randy Human to obtain permission to enter the secure food service area to prepare the meal for the third shift. According to Mr. Pressley, the inmates he supervised were often required to assist in preparing the third shift meal. Mr. Pressley testified that upon relieving the second shift officer supervising the inmates, he first determined whether enough food was previously prepared to cover all the third shift meals. Because there was insufficient food already prepared, he opened the food secure area, which he testified was not sealed, and allowed the inmates to obtain enough food to prepare the third shift meals. According to Mr. Pressley, he was informed by Randy Human that he was only required to file an incident report if he was required to break a tamper seal. Neither party called Randy Human to testify.

Gary Murray, a retired captain from the prison with over three years' experience at the prison and over thirty years' experience in corrections, also testified for Mr. Pressley regarding the third shift meal. According to Captain Murray, more meals may have been needed on the night of January 7, 2014 because of inclement weather. Captain Murray explained that on evenings where snow and ice covers the prison grounds, more staff and/inmates are placed on third shift to clear the ice away for the morning. These additional workers would require meals. Captain Murray agreed that the normal policy was for the second shift food service staff to prepare the meal for third shift staff. Captain Murray testified, however, that he was aware of situations where not enough food was prepared and an officer is required to enter the secured food storage area to obtain more food to prepare, after receiving permission to do so from a supervisor.

After the conclusion of the hearing, the board of appeals issued a final ruling containing detailed findings of fact and conclusions of law. The board of appeals found that Mr. Pressley had advance permission to take food from the secure storage area from his supervisor in order to prepare meals for the third shift that evening. Additionally, the board of appeals found that there was not sufficient evidence that Mr. Pressley broke tamper seals to enter the secure food storage area. The board also found that two correctional officers assigned to search the inmates upon returning to the housing unit on the night in question found no contraband, food or otherwise, on the inmates Mr. Pressley had been supervising in the kitchen. The board of appeals thus concluded that TDOC had not met its burden to show that Mr. Pressley committed a violation of the Post Orders or Tennessee Department of Human Resources Rule 1120.10-.03(2) concerning

4

incompetence. The Board did, however, find that TDOC carried its burden of proof with regard to Tennessee Department of Human Resources Rule 1120.10-.03(3) "negligence in the performance of duty," by failing to file a written report after going into the secure food storage area. The board of appeals, therefore, issued Mr. Pressley a fourteen day suspension without pay. The board of appeals also apparently denied Mr. Pressley's request for attorney's fees.

Both the State and Mr. Pressley filed petitions for judicial review in the Chancery Court. The State argued that the ALJ improperly placed the burden on TDOC in the Step III appeal, while Mr. Pressley argued that any punishment was not supported by the evidence. The two cases were consolidated, and the trial court entered an order vacating the board of appeals' decision. Specifically, the trial court found that the ALJ improperly placed the burden to TDOC during the appeal, as Mr. Pressley was the non-prevailing party in the previous proceeding. The trial court concluded that this error affected the merits of the decision, vacated the board of appeals' final order, and remanded for further proceedings, pretermitting the additional issues raised in the appeal to chancery court.

## Issues Presented

Mr. Pressley appeals, raising the following issues, which are taken from his appellate brief:

> 1.    Did the ALJ err in assigning the burden of proof to TDOC pursuant to Tenn. R. & Regs. 1360-04-01-.02(3) & (7) of the Uniform Rules of Procedure for Hearing Contested Cases before Administrative Agencies rather than assigning the burden of proof to Mr. Pressley based upon the provisions of Tenn. Code Ann. §§ 8-30-316 and 8-30-318 of the Tennessee Excellence, Accountability, and Management Act of 2012, Tenn. Code Ann. § 8-30-101 et. seq.
>
> 2.    For purposes of this case is TDOC or Mr. Pressley the party seeking to change the state of affairs with respect to any issue in this case under the terms of R. & Regs. 1360-04-01-.02(7) relative to assignment of the burden of proof in contested case proceedings?
>
> 3.    Is there substantial and material evidence in the record of the contested case proceedings conducted in this matter to support the Conclusion of Law in the Final Order that Mr. Pressley was guilty of negligence in the performance of his duties as a Correction Officer for TDOC.
>
> 4.    Did the board of appeals abuse its discretion in denying Mr. Pressley an award of attorney's fees and costs as

5

a "successfully appealing employee" pursuant to Tenn. Code Ann. § 8-30-318(k)?

## Standard of Review

This Court reviews this appeal under the narrow standard contained in the Uniform Administrative Procedures Act ("UAPA"). *See* Tenn. Code Ann. § 8-30-318 ("Decisions of the board of appeals are subject to judicial review in accordance with the Uniform Administrative Procedures Act, compiled in title 4, chapter 5, and the rules and regulations promulgated thereunder, in each case as amended in this chapter."); *see also* **Swift Roofing, Inc. v. State**, No. M2010-02544-COA-R3-CV, 2011 WL 2732263, at *4 (Tenn. Ct. App. July 13, 2011) ("This Court, as well as the trial court, reviews the Commission's decision under the narrowly defined standard of review contained in the UAPA, Tenn. Code Ann. § 4-5-322(h), rather than under the broad standard of review used in other civil appeals.") (citing **Davis v. Shelby Cnty. Sheriff's Dept.**, 278 S.W.3d 256, 264 (Tenn. 2009)). Pursuant to Tennessee Code Annotated Section 4-5-322:

> The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>
> (1) In violation of constitutional or statutory provisions;
>
> (2) In excess of the statutory authority of the agency;
>
> (3) Made upon unlawful procedure;
>
> (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
>
> (5)(A) Unsupported by evidence that is both substantial and material in the light of the entire record.
>
> > (B) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

Tenn. Code Ann. § 4-5-322(h).

Issues of statutory interpretation, however, present questions of law that this Court reviews under a de novo standard with no presumption of correctness. **Jones v. Bureau of TennCare**, 94 S.W.3d 495, 501 (Tenn. Ct. App. 2002) ("Judicial review of an agency's construction of a statute and its application of the statute to the facts of the case is a determination involving a question of law.") (citing **Patterson v. State Dept. of Labor**

*and Workforce Dev.*, 60 S.W.3d 60, 62 (Tenn. 2001)). Accordingly, we independently construe this provision, without deference to the interpretations rendered by TDOC or the chancery court. *Jones*, 94 S.W.3d at 501; *Metro. Gov't of Nashville & Davidson Cnty. v. Metro. Employee Ben. Bd.*, No. M2006-00720-COA-R3-CV, 2007 WL 1805151, at \*5 (Tenn. Ct. App. June 22, 2007); *McNiel v. Cooper*, No. M2005-01206-COA-R3-CV, 2007 WL 969407, at \*3 (Tenn. Ct. App. Mar. 13, 2007). "Importantly, a de novo review in this case comports with the UAPA standard allowing for reversal where the administrative tribunal's decision violates statutory provisions." *See Metro. Gov't*, 2007 WL 1805151, at \*5 (citing Tenn. Code Ann. § 4-5-322(h)(1)).

**Analysis**

**I.**

The first issue in this case concerns which party shouldered the burden of proof at the Step III appeal before the board of appeals. The consideration of this issue is governed by the TEAM Act. In 2012, the Tennessee General Assembly enacted the TEAM Act for the express purpose of:

> [E]stablish[ing] in the state a system of personnel administration that will attract, select, retain and promote the best employees based on merit and equal opportunity, and free from coercive political influences. Because the citizens of the state deserve services from the best employees, the goal of the state personnel system is to provide technically competent employees to render impartial services to the public at all times and to render such services in an ethical and honorable manner. Specifically, the intent of the general assembly is to further this purpose by allowing agencies greater flexibility in personnel management in order to enhance the overall effectiveness and efficiency of state government. The general assembly further intends that state government operate within a framework of consistent best practices across all state agencies and entities and that the state's most valued resource, its employees, be managed in a manner designed to enhance work force productivity and demonstrate sound business practices.

Tenn. Code Ann. § 8-30-101. The TEAM Act applies to "officers and positions of trust or employment in the service of state government in the executive branch and all boards, commissions and agencies of state government" other than some express exceptions not at issue in this case.

7

Because of the relatively recent enactment of the TEAM Act, no Tennessee appellate court has been called upon to interpret and enforce its requirements. In interpreting all statutes, however, we are guided by the familiar rules of statutory construction:

> "The most basic principle of statutory construction is to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995) (citing *State v. Sliger*, 846 S.W.2d 262, 263 (Tenn.1993)). "The text of the statute is of primary importance." *Mills v. Fulmarque*, 360 S.W.3d 362, 368 (Tenn. 2012). A statute should be read naturally and reasonably, with the presumption that the legislature says what it means and means what it says. *See BellSouth Telecomms., Inc. v. Greer*, 972 S.W.2d 663, 673 (Tenn. Ct. App. 1997).
>
> Statutes that relate to the same subject matter or have a common purpose must be read *in pari materia* so as to give the intended effect to both. "[T]he construction of one such statute, if doubtful, may be aided by considering the words and legislative intent indicated by the language of another statute." *Graham v. Caples*, 325 S.W.3d 578, 582 (Tenn. 2010) (quoting *Wilson v. Johnson Cnty.*, 879 S.W.2d 807, 809 (Tenn. 1994)). We seek to adopt the most "reasonable construction which avoids statutory conflict and provides for harmonious operation of the laws." *Carver v. Citizen Utils. Co.*, 954 S.W.2d 34, 35 (Tenn.1997). Issues of statutory interpretation present a question of law, which we review de novo on appeal, giving no deference to the lower court decision. *Mills*, 360 S.W.3d at 366; *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 895 (Tenn. 2011).

*In re Kaliyah S.*, 455 S.W.3d 533, 552 (Tenn. 2015). In addition,

> It is the duty of this court, where a statute is susceptible of two interpretations, one in harmony with, and the other in violation of, constitutional provisions, to give it that interpretation in harmony with the Constitution. But this principle does not authorize the court to give to an act an interpretation merely to bring it within the constitutional limitation. Where the act is unambiguous and susceptible of only one interpretation, it must be given that construction,

8

> whatever the consequences may be when tested by the Constitution.

*Ellenburg v. State*, 215 Tenn. 153, 158, 384 S.W.2d 29, 31 (Tenn. 1964) (citing of *Exum v. Griffis Newbern Co.*, 144 Tenn. 239, 246–47, 230 S.W. 601, 603 (Tenn. 1921)).

Here, there is no dispute that Mr. Pressley's employment was governed by the TEAM Act and that he is properly classified as a preferred service employee. Under the TEAM Act, a preferred service employee "who has successfully completed probation[,]"[3] may only "be dismissed, demoted, or suspended for cause." Tenn. Code Ann. § 8-30-316(a). The dismissal takes effect immediately "after the appointing authority gives notice to such employee and files a written statement with the commissioner." *Id.* The preferred service employee, however, is entitled to "appeal a dismissal, demotion, or suspension" under Tennessee Code Annotated Section 8-30-318.

Pursuant to the appeal provisions of the TEAM Act, Mr. Pressley was required to "file a complaint concerning the application of a law, rule, or policy to the dismissal, demotion, or suspension of the employee." Tenn. Code Ann. § 8-30-318(b). The TEAM Act reiterates that the "complaint filed under this section must identify the law, rule, or policy that was allegedly violated." Tenn. Code Ann. § 8-30-318(d). The TEAM Act further describes the three step appeal process. Pursuant to "Step I":

> The complainant shall reduce the complaint to writing and file the complaint with the complainant's appointing authority. The appropriate appointing authority or designee shall conduct any investigation considered necessary, meet with the complainant in person, and issue a decision, in writing, not later than fifteen (15) days after the date the appointing authority receives the complaint. If the appointing authority does not issue a decision fifteen (15) days after the appointing authority receives the complaint, the complainant may appeal to the commissioner by filing the complaint in accordance with Step II.

Tenn. Code Ann. § 8-30-318(h)(1)(A). The TEAM Act describes the "Step II" appeal as follows:

> (i) Step II: If the appointing authority does not find in favor of the complainant, the complainant may appeal to the commissioner of human resources by filing the complaint not later than fourteen (14) days after the date of the appointing

---

[3] There is no dispute that Mr. Pressley completed any applicable probation period.

authority's written decision. The commissioner of human resources shall review the complaint and the appointing authority's decision, and issue a decision, in writing, not later than thirty (30) days after the date the complaint was filed with the commissioner. If the commissioner does not issue a decision thirty (30) days after the commissioner receives the complaint, the complainant may appeal to the board of appeals in accordance with Step III.

> (ii) At Step II of the appeal procedure, it is the duty of the employee to provide written argument to the commissioner setting out why the employee believes the Step I decision was in error and ought to be overturned, reduced, or amended. An employee failing to provide such information to the commissioner shall be considered in default and forfeits the ability to appeal to Step III.

Tenn. Code Ann. § 8-30-318(h)(1)(B). Thus, it appears that a Step II appeal is only available if the appointing authority does not rule in favor of the complainant.

Either party may then appeal the decision from the Step II appeal to the board of appeals in a "Step III" appeal:

> Step III: The complainant or state agency may appeal in writing to the board of appeals not later than fourteen (14) days after the date the complainant, or in the case of a state agency, the state agency receives written notice of the action taken by the commissioner of human resources. Within ten (10) days after the receipt of the appeal, the administrative law judge assigned to assist the board of appeals in the proceedings related to the appeal shall determine whether all previous procedural requirements were completed properly and in a timely manner. If a procedural requirement has not been met, the appeal shall be dismissed. If the procedural requirements have been met, the board of appeals shall conduct proceedings in accordance with the Uniform Administrative Procedures Act, compiled in title 4, chapter 5, as modified herein, to determine if the law, rule, or policy specified in the complaint was violated.

Tenn. Code Ann. § 8-30-318(h)(1)(C). Thus, a Step III appeal is conducted pursuant to the rules established in the Uniform Administrative Procedures Act ("UAPA"),

Tennessee Code Annotated Section 4-5-101 through 301, except as modified by the TEAM Act.

At the Step III appeal before the board of appeals, the ALJ presiding over the case ruled that TDOC would bear the ultimate burden of proof. Indeed, the ALJ indicated that the board of appeals' objective was to consider whether: "(1) the violations charged are true, and (2) [the state] took appropriate discipline." Here, the trial court disagreed, and instead ruled that Mr. Pressley properly bore the burden of proof before the board of appeals, relying on the language of the TEAM Act:

> T.C.A. § 8-30-318 indicates that either party — the Complainant or the State Agency . . . may appeal in writing to the Board of Appeals, Whichever one did not prevail at the Step II procedure may appeal in writing to the Board of Appeals. Strongly implicit in that description of the appeal right, the Court finds, is that the non-prevailing party at the Step II procedure has the burden of proof at the next level of the process, which is the Board of Appeals.
>
> Reading TCA §8-30-316 together with TCA §8-30-318, there is no adverse employment action and hence no appeal until the State agency employer has given written notice to the employee and the Commissioner of Human Resources, that the disciplinary action is being taken. That is the triggering event for the employee to file a Step I complaint. Mr. Pressley here did so, asserting that that there was no cause for his dismissal. And because he did not prevail at Step I, he had the opportunity to, and did move forward to Step II, again to assert that the Department of Correction had no cause to dismiss him. The Step II decision, however, by Rebecca Hunter, the Commissioner of the Department of Human Resources, was to uphold the dismissal, on the basis that the information given to her by the parties for consideration had indicated culpable wrongdoing by Mr. Pressley. Thus, when Mr. Pressley appealed that determination to Step III, the Board of Appeals, it was his burden to go forward at Step III to show that there was no cause for him to be dismissed. The Court thus finds that the Board of Appeals did apply an erroneous burden of proof.

Mr. Pressley argues, however, that the trial court erred in its conclusion based upon the Tennessee caselaw regarding de novo appeals and applicable provisions of the UAPA.

The dispute in this case concerns whether Mr. Pressley, as the employee-complainant, or TDOC, bears the ultimate burden of proof in the Step III appeal. "The duty of proving or disproving, the facts in dispute on an issue between the parties to an action, is termed the burden of proof." *Gibson's Suits in Chancery* § 13.03 (8th ed. 2004). Nothing in the TEAM Act specifically addresses the burden of proof issue raised in this appeal.[4] The Step III Appeal outlined in the TEAM Act, however, specifically references the UAPA. The UAPA authorizes the secretary of state to adopt model rules outlining the appropriate procedures for use in administrative proceedings. *See* Tenn. Code Ann. § 4-5-219(a). According to one such rule, the Uniform Rules of Procedure for Hearing Contested Cases Before State Administrative Agencies ("Uniform Rules"), the party who initiates the proceedings is the moving party and "usually bears the ultimate burden of proof." Tenn. Comp. R. & Regs. 1360-04-01-.02(3). However, the Uniform Rules go on to explain that:

> In some cases . . . the party who initiated the proceedings will not be the party with the burden of proof on all issues. In such cases, the administrative judge will determine the order of proceedings, taking into account the interests of fairness, simplicity, and the speedy and inexpensive determination of the matter at hand. The "petitioner" is usually a state agency or department.

*Id.* Once the burden of proof has been assigned, the Uniform Rules detail how that burden should be met:

> The "burden of proof" discussed in the definition of "petitioner" above refers to the duty of a party to present evidence on and to show, by a preponderance of the evidence, that an allegation is true or that an issue should be resolved in favor of that party. A "preponderance of the evidence" means the greater weight of the evidence or that, according to the evidence, the conclusion sought by the party with the burden of proof is the more probable conclusion. **The burden of proof is generally assigned to the party who seeks to change the present state of affairs with regard to any**

---

[4] In its brief, the State argues that the TEAM Act preempts the burden of proof rules applicable under the UAPA. Specifically, the State argues that because the ALJ's authority is limited by the TEAM Act, the ALJ has no authority to determine to which party the burden should be allocated. Regardless of whether the ALJ has such authority, this Court certainly has authority to interpret and apply statutory provisions. Furthermore, as stated above, we are reviewing this issue de novo with no deference to the ALJ's determination. Furthermore, we note that the TEAM Act contains no express provisions regarding burden of proof in the Step III Appeal. Accordingly, we find the State's argument regarding the preemptive effect of the TEAM Act to this issue unpersuasive.

12

**issue.** The administrative judge makes all decisions regarding which party has the burden of proof on any issue.

Tenn. Comp. R. & Regs. 1360-04-01-.02(7) (emphasis added).

Application of the Uniform Rules to the facts of this case, however, does not result in an obvious conclusion. First, we note that a review of the administrative record in this case indicates that Mr. Pressley was the complainant pursuant to the TEAM Act in that he initiated the three-step appeals process. Furthermore, having lost his Step II appeal, Mr. Pressley was petitioning the board of appeals in the Step III appeal for reinstatement. Indeed, nothing in Mr. Pressley's brief to this Court argues that he was not properly deemed the petitioner with regard to his Step III appeal. Despite this fact, the Uniform Rules indicate that the state is typically the petitioner in an administrative proceeding. *See* Tenn. Comp. R. & Regs. 1360-04-01-.02(3). Further, it could be argued that either party was seeking to change the present state of affairs—Mr. Pressley by appealing the denial of his Step II appeal to the board of appeals or the State by seeking to change Mr. Pressley's employment status. Indeed, a review of the few cases that have considered this issue reveals that they do not consistently place the burden on either the state agency or the complaining party. *See **Gen. Motors Corp. v. Tennessee Motor Vehicle Comm'n***, No. M2008-00082-COA-R3-CV, 2008 WL 4756809, at *6 (Tenn. Ct. App. Oct. 30, 2008) (allocating the burden to an automobile dealer who sought to relocate a car dealership); ***Jones v. Bureau of TennCare***, 94 S.W.3d 495, 500 (Tenn. Ct. App. 2002) (allocating the burden of proof to the State on the issue of whether certain services currently provided to a patient were no longer medically necessary); ***State v. Hartley***, No. 89-74-II, 1989 WL 44905, at *3 (Tenn. Ct. App. May 5, 1989), *aff'd*, 790 S.W.2d 276 (Tenn. 1990) (allocating the burden to the State in a case where the State sought to destroy a dangerous dog); *see also **Grier v. Goetz***, 402 F. Supp. 2d 876, 928 (M.D. Tenn. 2005), *order clarified*, 421 F. Supp. 2d 1080 (M.D. Tenn. 2006) (noting that because enrollees are typically the petitioners in a medical appeal, the burden of proof in all medical appeals "is generally already on the enrollees" and "the State should not bear the burden of disproving medical necessity"). Because the Uniform Rules cannot resolve this issue, we must look to other authority.

Mr. Pressley argues that because the Step III appeal is a de novo proceeding, this Court should take guidance from other cases involving de novo appeals of administrative decisions. Under these cases, Mr. Pressley contends that the ultimate burden should be on TDOC to sustain the charges that led to the termination. We acknowledge that the parties agreed at oral argument that the Step III appeal before the board of appeals is conducted de novo.

Mr. Pressley's argument relies primarily on two Tennessee Supreme Court cases concerning the Teacher Tenure Act, ***Cooper v. Williamson County Board of Education***, 746 S.W.2d 176 (Tenn. 1987), and ***Saunders v. Anderson***, 746 S.W.2d 185 (Tenn. 1987). Under the Teacher Tenure Act, a tenured teacher who "is dissatisfied with the

administrative decision of a school board regarding suspension or dismissal," may bring a petition for "judicial review of the board's actions pursuant to T.C.A. § 49-5-513." *Cooper*, 746 S.W.2d at 179. The petition required to pursue judicial relief under Tennessee Code Annotated Section 49-5-513, "shall state briefly the issues involved in the cause, *the substance of the order of the board, or the respects in which the petitioner claims the order of the board is erroneous, and praying for an accordant review.*" *Id.* at 180 (quoting Tenn. Code Ann. § 49-5-513(b)) (emphasis added by *Cooper* Court). Based upon this language, the trial court limited its review to only whether the evidence preponderated for or against the determination of the school board. *Cooper*, 746 S.W.2d at 178. The trial court ultimately found that the evidence preponderated in favor of the school board's decision. The Tennessee Supreme Court thereafter granted a direct appeal.

The Tennessee Supreme Court first concluded that the trial court improperly narrowed the scope of review permitted by the Teacher Tenure Act. Instead, the *Cooper* Court concluded that a teacher appealing his or her dismissal is entitled to a de novo hearing in the chancery court, with no presumption of correctness afforded to the administrative body's decision. *Cooper*, 746 S.W.2d at 182. The Court went further, however, to establish the appropriate allocation of the burdens of production and proof in judicial review under the Teacher Tenure Act:

> At the hearing before the school board, the burden of proof rests upon the party preferring the charges against the teacher. *Williams v. Pittard*, [] 604 S.W.2d [845,] 850 [(Tenn. 1980)]. When a teacher dissatisfied with the administrative decision brings the board's action to the Chancery Court for judicial review, then the order of proof but not the burden of proof shifts. In the [c]hancery [c]ourt, the plaintiff's petition raises the issues for review, stating the substance of the board's actions and the errors made by the board in its decision, and thus the plaintiff must present a prima facie case to substantiate the allegations of the pleadings; however, the burden of proof regarding the charges against the teacher does not shift to the teacher and remains on the same party both before the board and in [c]hancery [c]ourt. Since the hearing in [c]hancery [c]ourt is *de novo* and no presumption of correctness attaches to the board's decision, the burden remains on the party that bore it before the board but the order of proof is shifted under the statute to the party filing the petition for review because that party is challenging the validity of the administrative decision, the existence of which is clearly presumed by the terms of the statute. The plaintiff must, therefore, demonstrate the error in the board's action to satisfy the requirements of the statute. Once the plaintiff establishes a *prima facie* case, the defendant then bears the

14

> burden of showing that the action taken by the board is
> appropriate and that the evidence is sufficient to justify the
> board's action. The plaintiff may then have the opportunity to
> rebut any proof proffered by the defendant.

*Id.* (footnote omitted). The ***Cooper*** Court then remanded the case for the trial court to follow the above parameters in its judicial review of the tenured teacher's dismissal. *Id.* at 184.

Shortly thereafter, the Tennessee Supreme Court was faced with an argument regarding the application of the burden framework established in ***Cooper***. *See generally* ***Saunders v. Anderson***, 746 S.W.2d 185 (Tenn. 1987). In ***Saunders***, a tenured teacher argued that she was improperly required to bear the burden of proof at the judicial review hearing of her dismissal, where the trial court dismissed her petition at the close of her own proof. The ***Saunders*** Court further illuminated the burden framework established in Cooper, stating:

> The burden of proof regarding the charges themselves never
> shifts from the proffering party to the teacher at any point in
> the proceedings before the board or in the Chancery Court. If
> the proof presented by the plaintiff fails to demonstrate any
> error in the board's decision or otherwise to substantiate the
> allegations of the petition for de novo review, then the trial
> court could exercise its discretion, upon a proper motion to
> dismiss, especially where the evidence presented by the
> plaintiff shows that the board's action was justified in any
> case. . . .
>
> * * *
>
> Since the teacher is merely required to make a prima facie
> case in the Chancery Court to satisfy the terms of the statute,
> ordinarily the defendant must then carry its burden to
> demonstrate that the evidence justifies the board's actions.

*Saunders*, 746 S.W.2d at 189. The ***Saunders*** Court concluded, however, that the trial court did not err in dismissing the teacher's judicial review petition where her own evidence established that there was sufficient cause to sustain her termination. *Id.* ("In this case, the Plaintiff's own evidence, which included testimony by the primary actors who proffered the charges and had personal knowledge concerning the charges against Plaintiff, happened to provide a sufficient basis upon which the Chancellor could fully determine the merits of the case."). In denying a petition to rehear, the ***Saunders*** Court further explained the prima facie showing required by the complaining employee:

We emphasize that the showing required for the Plaintiff's prima facie case is de minimis. A de novo review of a Teacher Tenure decision in Chancery Court is similar to but not exactly like a trial de novo in [c]ircuit [c]ourt on appeal from [g]eneral [s]essions. The terms of the statute require the plaintiff to make allegations concerning the board's action. A prima facie case could consist of any number of allegations, including but not limited to:

1. A deprivation of a statutorily guaranteed right, such as failure to give proper notice as required by T.C.A. § 49-5-511(a)(4), or failure to provide a timely pre-termination due process hearing.

2. That dismissal or suspension was not justified by the evidence or was based on evidence irrelevant to the charges; a failure to carry the burden of proof at the board hearing; or improperly admitted evidence that unduly prejudiced the board.

3. Improper charges were brought against the teacher.

Some of these could be shown on the face of the record made at the board hearing, but others would require at least a minimal degree of proof to support the allegations of the petition to review. Nevertheless, we reiterate that, depending on the allegations in the petition, a de minimis showing is all that is necessary in these cases to constitute a prima facie case sufficient to comply with the language of the statute.

*Saunders*, 746 S.W.2d at 190–91. Thus, under the Teacher Tenure Act, despite the fact that the teacher must make some minimal showing as to how the school board decision was erroneous, having met that de minimis burden, the ultimate burden to sustain the charges resulting in the dismissal never shifts from the school board.

The State argues, however, that the rule applicable under the Teacher Tenure Act should not apply in this case because unlike under the Teacher Tenure Act, the dismissal or suspension of an employee under the TEAM Act is effective immediately upon notice to the employee and filing with the commissioner. *See* Tenn. Code Ann. § 8-30-316(a). Under the Teacher Tenure Act, however, the filing of a petition to challenge a dismissal "shall suspend the order of the board pending a decision by the chancellor." Tenn. Code Ann. § 49-5-513(e) (noting, however, that the teacher is not permitted to resume teaching until a final determination). Furthermore, while the Teacher Tenure Act provides that the purpose of the hearing contemplated by Tennessee Code Annotated Section 49-5-513 is to make a "determination of whether or not a teacher should be dismissed, suspended, or

16

reinstated" after a full evidentiary hearing, *Cooper*, 746 S.W.2d at 182, the State contends that pursuant to the plain language of the TEAM Act the only question in a Step III appeal is "whether the employer violated a rule materially affecting the act to discipline the employee." Instead, the State argues that the procedure outlined in the TEAM Act is more akin to employment discrimination suits of at-will employees.

Despite the State's decision to focus only on differences apparent in the language of the Teacher Tenure Act and the TEAM Act, from our review of *Cooper* and *Saunders*, the Tennessee Supreme Court's holding that the ultimate burden of proof was assigned to the State did not result from the express language of the Teacher Tenure Act, but from the due process protections afforded to tenured teachers. Indeed, in support of its holding that the ultimate burden rests with the state agency to sustain charges against a tenured teacher, the *Cooper* Court cited the Tennessee Supreme Court's earlier decision in *Williams v. Pittard*, 604 S.W.2d 845 (Tenn. 1980). In *Williams*, a tenured teacher was dismissed for inefficiency and insubordination. *Id.* at 846. The teacher sought judicial review and the trial court reversed on grounds that the initial hearing deprived her of due process and that the evidence was insufficient to sustain the charges. On appeal, the question concerned what process was due under the Teacher Tenure Act. According to the Tennessee Supreme Court:

> While the Tennessee Teachers' Tenure Act may not provide tenure[d] teachers the full range of procedural safeguards that are mandated for criminal defendants by our state and federal constitutions, the Act does make it clear that, at a minimum, notice and a hearing are required. It has further been established that a tenure[d] teacher is entitled to a "due process" hearing prior to deprivation of the significant property interest which a teacher obtains upon being granted tenure. *See, e. g., Sullivan v. Brown*, 544 F.2d 279, 284 (6th Cir. 1976). Of course, a "due process" hearing entails flexible standards which may require differing procedural safeguards according to the circumstances of individual cases. *Cafeteria and Restaurant Workers v. McElroy*, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961).
>
> Unquestionably, one who is deprived of a significant property interest is entitled to a due process hearing "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62, 66 (1965).

*Williams*, 604 S.W.2d at 849.

With this framework in mind, the ***Williams*** Court then considered the question of whether the administrative board properly allocated the burden of proof. ***Id.*** According to the ***Williams*** Court, the ultimate burden of proof should be placed on the school board:

> Although very few courts have addressed this issue, it seems clear that regardless of the particular statutory scheme involved, a teacher with tenure cannot be required to prove his or her innocence or be required to show cause why he or she should be able to continue as a teacher.

***Williams***, 604 S.W.2d at 849 (citing ***In re Swink***, 132 Pa.Super. 107, 200 A. 200 (1938); *See also* ***Mass v. Board of Education***, 39 Cal.Rptr. 739, 61 Cal.2d 612, 394 P.2d 579 (1964); ***School District v. Thompson***, 121 Colo. 275, 214 P.2d 1020 (1950)). Thus, due process, rather than the express language of the Teacher Tenure Act, demanded that the burden be placed on the agency to show inefficiency or insubordination to sustain the dismissal, rather than on the teacher to show an error in the administrative agency's decision that would support reinstatement. ***Williams***, 604 S.W.2d at 849; *see also* ***Saunders***, 746 S.W.2d at 189; ***Cooper***, 746 S.W.2d at 182.

The State argues, however, that no due process right attaches to a preferred service employee's interest in continued employment under the TEAM Act. Specifically, the State argues that although the now-repealed civil service system under which state employees were previously employed granted employees due process protections related to their dismissal,[5] the Tennessee General Assembly did not intend to create the same rights with the enactment of the TEAM Act. As such, the State argues that under the TEAM Act, "the status of 'employee' is not a right, and the status can be lost immediately." From our review of the plain language of the TEAM Act, however, we cannot agree that preferred service employees who have successfully completed probation do not have a protected property interest in their continued employment.

According to this Court:

> The Fourteenth Amendment to the United States Constitution protects individuals against government deprivations of "life, liberty or property without due process of law." U.S. Const. amend. XIV, § 1. In a due process case, the court follows an established two-step analysis determining whether the plaintiff was deprived of a protected interest and, if so, what process is due.

---

[5] *See* Tenn. Code Ann. § 8-30-331 (2011) (specifically stating that certain employees have a "property right" to their positions and that "no suspension, demotion, dismissal or any other action which deprives a regular employee of such employee's 'property right' will become effective until minimum due process is provided"), *repealed by* 2012 Pub. Acts, c. 800, § 41, eff. Oct. 1, 2012.

***Armstrong v. Tenn. Dep't of Veterans Affairs***, 959 S.W.2d 595, 597–98 (Tenn. Ct. App. 1997) (citing ***Rowe v. Board of Educ. of Chattanooga***, 938 S.W.2d 351, 354 (Tenn. 1996), *cert. denied*, 520 U.S. 1128, 117 S.Ct. 1271, 137 L.Ed.2d 349 (1997)). Thus, "[t]he threshold consideration with regard to any procedural due process claim is whether the plaintiff has a liberty or property interest that is entitled to protection[.]" ***Martin v. Sizemore***, 78 S.W.3d 249, 262 (Tenn. Ct. App. 2001) (citing ***Rowe***, 938 S.W.2d at 354: ***Armstrong***, 959 S.W.2d at 597–98).

"Property interests are not created by the federal constitution. Instead, they are created and defined 'by existing rules or understandings that stem from an independent source such as state law.'" ***Rowe***, 938 S.W.2d at 354 (citing ***Board of Regents of State Colleges v. Roth***, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)). "To qualify for constitutional protection, a property interest must be more than a 'unilateral expectation' or an 'abstract need or desire.' It must be a 'legitimate claim of entitlement' created and defined by 'existing rules or understandings that stem from an independent source such as state law.'" ***Martin***, 78 S.W.3d at 262 (citing ***Roth***, 408 U.S. at 577, 92 S.Ct. at 2709). "The types of interests entitled to protection as property interests are varied. However, they share the common characteristic that they are an individual entitlement, grounded in state law[] that cannot be removed except 'for cause.'" ***Martin***, 78 S.W.3d at 262. Indeed, the United States Supreme Court has stated that '[t]he hallmark of property . . . is an individual entitlement grounded in state law, which cannot be removed except '**for cause**.'" ***Logan v. Zimmerman Brush Co.***, 455 U.S. 422, 430, 102 S.Ct. 1148, 1155, 71 L.Ed.2d 265 (1982) (emphasis added); *see also* ***Cleveland Bd. of Educ. v. Loudermill***, 470 U.S. 532, 538–39, 105 S. Ct. 1487, 1491, 84 L. Ed. 2d 494 (1985) (holding that a statute providing that employees could only be dismissed for "misfeasance, malfeasance, or nonfeasance" related to their jobs "plainly supports the conclusion . . . that respondents possessed property rights in continued employment"); ***Case v. Shelby Cnty. Civil Serv. Merit Bd.***, 98 S.W.3d 167, 172 (Tenn. Ct. App. 2002) ("The Merit Act stipulates that classified county employees may be terminated only for just cause. . . . Such employees possess a property interest in their continued employment which may not be deprived by the State without due process.") (internal citation omitted).

As previously discussed, there is no dispute that Mr. Pressley was a preferred service employee who had successfully completed probation. Accordingly, pursuant to the plain language of the TEAM Act, TDOC was only entitled to dismiss, demote, or suspend Mr. Pressley "for cause." Tenn. Code Ann. §8-30-316(a). Thus, Mr. Pressley and other similarly situated employees have a "legitimate claim of entitlement" to continued employment absent cause for their dismissal pursuant to the express requirements of the TEAM Act. ***Martin***, 78 S.W.3d at 262 (citing ***Roth***, 408 U.S. at 577, 92 S.Ct. at 2709). Based upon the unequivocal holding in ***Logan*** and its progeny, the fact that Mr. Pressley could only be dismissed for cause "plainly supports the conclusion" that he and other similarly situated employees retain a protected property interest in continued

19

employment. *See* ***Logan***, 455 U.S. at 430, 102 S.Ct. at 1155; ***Loudermill***, 470 U.S. at 538–39, 105 S. Ct. at 1491; ***Case***, 98 S.W.3d at 172; ***Armstrong***, 959 S.W.2d at 597–98.

Because we have determined that Mr. Pressley has a protected property, we must now consider what process is due. *See* ***Armstrong***, 959 S.W.2d at 598 (citing ***Rowe***, 938 S.W.2d at 354). The State suggests that this Court should look no further than the TEAM Act to determine the process to which the employee is entitled—that is, simply the right to an administrative hearing to determine the narrow issue of "whether the appointing authority violated a law, rule, or policy applicable to the appointing authority's action." Under this narrow reading of the TEAM Act, the State suggests that the burden would clearly be on the employee to show such a violation as to do the opposite would be to illogically require TDOC to prove a negative. *C.f.* ***Thompson v. N. Missouri R. Co.***, 51 Mo. 190, 192 (1873) ("It seems to be illogical and not required by the rules of good pleading, to compel a plaintiff to aver and prove negative matters in cases of this kind."); ***Penn Clothing Co. v. U.S. Exp. Co.***, 48 Pa. Super. 520, 526 (1912) ("[W]e think [it] would be illogical in that it would require of the defendant an attempt to prove a negative[.]").

A similar argument was made by the administrative board, and rejected by the United States Supreme Court, in ***Cleveland Bd. of Educ. v. Loudermill***, 470 U.S. 532, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985). In ***Loudermill***, a security guard appealed the termination of his employment, arguing that he was denied due process. After confirming that the security guard had a protected property interest in continued employment, the ***Loudermill*** Court was faced with the question of what process was due. ***Id.*** at 538–39. The administrative board argued that any right that might attach to the security guard's employment was "defined by, and conditioned on, the legislature's choice of procedures for its deprivation." ***Id.*** at 539. Because the procedures outlined by the state statute were adhered to, the administrative board contended that no due process violation occurred. ***Id.*** at 539–40.

The ***Loudermill*** Court rejected this argument, however, holding that because "'minimum [procedural] requirements [are] a matter of federal law, they are not diminished by the fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action.'" ***Id.*** at 541 (quoting ***Vitek v. Jones***, 445 U.S. 480, 491, 100 S.Ct. 1254, 1263, 63 L.Ed.2d 552 (1980)); *see also* ***Logan***, 455 U.S. at 432, 102 S.Ct. at 1155 (holding that allowing the State to dictate the procedure it deems adequate for depriving an individual of a protected property interest, "would allow the State to destroy at will virtually any state-created property interest"). Instead, the Court held that:

> "Property" cannot be defined by the procedures provided for
> its deprivation any more than can life or liberty. The right to
> due process "is conferred, not by legislative grace, but by
> constitutional guarantee. While the legislature may elect not

20

to confer a property interest in [public] employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards."

*Loudermill*, 470 U.S. at 541, 105 S. Ct. at 1493 (quoting *Arnett v. Kennedy*, 416 U.S. 134, 167, 94 S.Ct. 1633, 1650, 40 L.Ed.2d 15 (1974) (Powell, J., concurring in part and concurring in result in part). Thus, "once it is determined that the Due Process Clause applies, 'the question remains what process is due.'. . . The answer to that question is not to be found in the [state] statute." *Loudermill*, 470 U.S. at 541, 105 S. Ct. at 1493 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972)). Instead, this issue "must be analyzed in constitutional terms." *Logan*, 455 U.S. at 432, 102 S.Ct. at 1155 (quoting *Vitek*, 445 U.S. at 491, 100 S.Ct. at 1263).

The Tennessee Supreme Court in *Thompson v. Memphis City Sch. Bd. of Educ.*, 395 S.W.3d 616 (Tenn. 2012), analyzed the minimum required by due process when a public employee "possesses a constitutionally protected property interest in continued employment":

> At a minimum, the Due Process Clause of the Fourteenth Amendment of the United States Constitution entitles a tenured teacher to pre-termination notice of the charges against her, an explanation of the employer's evidence, and an opportunity to present her side of the story to the employer. [*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985)]; *Gunasekera v. Irwin*, 551 F.3d 461, 469 (6th Cir. 2009); *Farhat v. Jopke*, 370 F.3d 580, 595 (6th Cir. 2004). These minimal requirements are constitutionally essential.

*Thompson*, 395 S.W.3d at 627 (footnote omitted) (holding that a "tenured teacher, like other public employees," possesses such a property interest). In considering what due process requires in this particular situation, however, we emphasize that the only issue raised in this appeal concerns the proper allocation of the burden of proof at the Step III appeal. Accordingly, we need not consider whether Mr. Pressley was deprived of the full panoply of rights to which he may have been entitled; instead, our review is confined only to the issue of whether the ALJ properly assigned the burden of proof to TDOC in the administrative proceedings.

As previously discussed, the Tennessee Supreme Court in *Williams* specifically held that because a tenured teacher's interest in continued employment is protected by the Due Process Clause of the Fourteenth Amendment, the State must bear the ultimate burden of proof to show that the adverse employment action against the tenured teacher was appropriate. *See Williams*, 604 S.W.2d at 849. Tennessee courts have come to similar conclusions in other cases where a public employee who has a protected property

21

interest in continued employment challenges his or her dismissal. For example in ***Case v. Shelby County Civil Service Merit Board***, 98 S.W.3d 167, (Tenn. Ct. App. 2002), this Court held that in cases before the Shelby County Civil Service Merit Board "the burden of demonstrating cause is on the employer[.]" ***Id.*** at 175–76; *see also* ***Kirkwood v. Shelby Cnty. Gov't***, No. W2005-00769-COA-R9-CV, 2006 WL 889184, at *4 (Tenn. Ct. App. Apr. 6, 2006) (holding that that the burden is on the State and "never shifts"). Thus, we have held that due process requires that: "[i]n disciplinary proceedings, or where the issue is whether the party charged has committed an illegal or improper act, the burden is on the one making the charges and this rule applies where the charge is made by an administrative body." ***Kirkwood***, 2006 WL 889184, at *4. Although the provisions of the TEAM Act are certainly not synonymous with those of the Teacher Tenure Act or other acts involving public employees, we conclude that because similar due process protections are implicated in these situations, the ultimate burden of proof under the TEAM Act must likewise rest on the State to show cause sufficient to sustain the dismissal or suspension of an employee in a Step III apeal pursuant to Tennessee Code Annotated Section 8-30-316. Our Court has previously defined the term "cause" as "some substantial shortcoming which renders continuance in office or employment in some way detrimental to the discipline and efficiency of the service and something which the law and sound public opinion recognize as good cause for removal." ***Id.*** at 175 (quoting ***Knoxville Utils. Bd. v. Knoxville Civil Serv. Merit Bd.***, No. 03A01-9301-CH-00008, 1993 WL 229505, at *10 (Tenn. Ct. App. June 28, 1993)). Consequently, TDOC had the ultimate burden to show cause as defined by this Court to sustain Mr. Pressley's dismissal.

Because the TEAM Act requires a complainant employee to show a violation of a rule, law or policy through the three-step appeal process, however, we also conclude, like the ***Cooper*** Court, that the employee has a de minimis burden to establish a prima facie violation prior to the triggering of the State's burden to show cause. In this case, Mr. Pressley specifically alleged in his Step III appeal that there was no cause to support the termination of his employment. As discussed throughout this case, cause was required to terminate Mr. Pressley's employment pursuant to Tennessee Code Annotated Section 8-30-316(a). Thus, Mr. Pressley clearly alleged a violation of law with regard to the termination of his employment. While the ***Saunders*** Court indicated that allegations may be insufficient in some cases to sustain an employee's de minimis burden pursuant to the burden framework established in ***Cooper***, *see* ***Saunders***, 746 S.W.2d at 190–91, we conclude that under the unique procedural history in this case, Mr. Pressley appropriately met his burden, given then the board of appeals ultimately ruled that there was not sufficient cause to support termination. Our conclusion, however, is limited to the facts presented in this case. The ALJ, therefore, did not err when it required TDOC, rather than Mr. Pressley, to prove that there was sufficient cause for the termination and that the punishment was appropriate. *See* ***Case***, 98 S.W.3d at 173–75 (holding that an employee who may only be dismissed or suspended for cause has the right to challenge the severity of the disciplinary measures imposed).

**II.**

Mr. Pressley next argues that the board of appeals' decision to suspend him for fourteen days is unsupported by substantial and material evidence.[6] As previously discussed, this Court may alter or reverse an agency decision where the decision is "[u]nsupported by evidence that is both substantial and material in the light of the entire record." Tenn. Code Ann. § 4-5-322(h)(5)(A). While this Court may consider evidence in the record that detracts from its weight, the Court is not allowed to substitute its judgment for that of the agency concerning the weight of the evidence. *See id.* at 322(h)(5)(B).

"The 'substantial and material evidence' standard contained in [Section] 4-5-322(h)(5) is couched in very broad language." ***Wayne Cnty. v. Tenn. Solid Waste Disposal Control Bd.***, 756 S.W.2d 274, 280 (Tenn. Ct. App. 1988). What amounts to substantial evidence is not precisely defined by the statute. In general terms, it requires something less than a preponderance of the evidence, but more than a scintilla or glimmer. ***Gluck v. Civil Serv. Comm'n***, 15 S.W.3d 486, 490 (Tenn. Ct. App. 1999). "When we are reviewing the evidentiary foundation of an administrative decision under Tenn. Code Ann. § 4-5-322(h)(5), we are not permitted to weigh factual evidence and substitute our own conclusions and judgment for that of the agency, even if the evidence could support a different determination than the agency reached." ***Ware v. Greene***, 984 S.W.2d 610, 614 (Tenn. Ct. App. 1998); *see also* Tenn. Code Ann. § 4-5-322(h); ***Humana of Tenn. v. Tenn. Health Facilities Comm'n***, 551 S.W.2d 664, 667 (Tenn. 1977). An agency's decision may be supported by substantial and material evidence even when the evidence could support another conclusion. ***Jones v. Greene***, 946 S.W.2d 817, 828 (Tenn. Ct. App. 1996). The courts need only reject an agency's factual findings when, considering the record as a whole, a reasonable mind would **necessarily** come to a different conclusion. ***Jones v. Greene***, 946 S.W.2d 817, 828 (Tenn. Ct. App. 1996) (emphasis added) (citing 5 Jacob A. Stein, *Administrative Law* § 51.02, at 51–61 (1992)).

Here, the board of appeals found that Mr. Pressley committed negligence in the performance of duties pursuant to Tenn. Comp. R. & Regs. 1120-10-.03, which provides, in relevant part:

> The following are examples of acts that may warrant disciplinary action. This list is not exclusive and shall not be construed to limit an Appointing Authority's discretion in disciplinary matters:
>
> \* \* \*
>
> (3) Negligence in the performance of duties; . . . .

---

[6] Nothing in the State's brief suggests that, if the board of appeals applied the correct burden of proof, the board of appeals nevertheless erred in finding Mr. Pressley guilty of only minor charges and reducing his dismissal to a suspension.

Neither party directs this Court to any legal authority specifically defining "negligence in the performance of duties" pursuant to the above rule. Indeed it appears to this Court that the current version of Tenn. Comp. R. & Regs. 1120-10-.03 was adopted in 2012 shortly after the enactment of the TEAM ACT. Regardless of the exact definition of "negligence in the performance of duties[,]" the board of appeals specifically stated that it relied upon Mr. Pressley's failure to promptly file a written report after entering a secure area in the prison kitchen in reaching its conclusion that Mr. Pressley committed negligence. The board of appeals thereafter concluded that a fourteen day suspension without pay was appropriate punishment for Mr. Pressley's conduct.

To support this finding and conclusion, the board of appeals made the following findings of fact specific to this issue:

> 3. On or about January 6, 2014, [Mr. Pressley] was the kitchen officer on 3rd shift at [the prison] and supervised four inmates assigned to the kitchen during 3rd shift as cooks and cleaners. For reasons that remain unclear on this evening, complainant contacted his supervisor, Randy Human, and notified him of a food shortage and the need to obtain food from the secure food storage area, and his supervisor approved him to do so.
>
> 4. Surveillance camera footage of the complainant opening doors in the kitchen and/or food storage area is not clear as to whether there were tamper seals on the doors.
>
> 5. Complainant did not find a tamper seal on the door to the secure storage area.
>
> 6. No written report was ever made as to any food storage necessitating the entry into the secure storage area.

Based upon these findings, the board of appeals concluded:

> 12. Department did carry its burden of proof that complainant violated Tennessee Department of Human Resources Rule 1120-10-.03 (3), "negligence in the performance of duties" by presenting evidence that complainant was required to make a written report upon entry into the secured storage area when a tamper seal has been broken and a written report as to any food s[h]or[t]age.

* * *

24

The Board of Appeals determines that the appropriate discipline is a suspension for a period of fourteen (14) calendar days.

Mr. Pressley argues that the board of appeals' findings of fact conflict with its legal conclusions with regard to the necessity of filing an incident report. As shown above, although the board of appeals found that Mr. Pressley did not find a tamper seal on the door and none was conclusively shown in the video footage, the board of appeal nevertheless concluded that Mr. Pressley committed negligence in failing to file "a written report upon entry into the secured storage area **when a tamper seal has been broken**." (Emphasis added). Furthermore, Mr. Pressley asserts that any conclusion that an incident report was required regardless of whether a tamper seal had been broken is in conflict with the plain language of the policy that he allegedly violated. According to the Post Orders, which were introduced during the hearing before the board of appeals as a basis for disciplinary action: "No unauthorized person (inmate or staff) may enter the secure storage area unless monitored by food service management. This area will be sealed by food management at close. This seal is not to be broken without management being notified and an incident report filed." Post Order, p. 7, § N. Based upon this language, Mr. Pressley argues that he was only required to file an incident report in the event that a tamper seal was required to be broken to enter a secure storage area. Because the board of appeals did not find that a tamper seal was in place at the time that Mr. Pressley entered the secure food storage area, he contends that he was not required to file an incident report. As such, Mr. Pressley asserts that the board of appeals' decision that his failure to file an incident report constituted negligence is clearly erroneous.

The State argues, however, that the board of appeals' final ruling and oral deliberations establish that the board of appeals did not absolve Mr. Pressley from all wrongdoing with regard to the incident. According to one board member discussing the appropriate punishment for the above violation,

> [C]learly food was taken and we can't really determine where it went or what happened to it. And I don't think what happened that night was appropriate[.] . . . [W]hat happened here shouldn't have happened; but I think there was something going on within the supervisory group there that was allowing this to happen.

Another board member explained: "I think my basis for feeling that some discipline needs to be imposed really relates to the lack of written documentation and not so much the removal of the food because that, again, remains a mystery to me." Specifically with regard to this issue, another board member stated:

> It would seem to me, looking back through some of the exhibits, there is a policy on what you're supposed to do if there is not a seal. It would seem to me that maybe some of

25

these questions could have been answered if perhaps there was an incident report. If the seal was off, we were given permission to go back there because there was a shortage of food, just some sort of documentation somewhere about what happened that night. It would seem like as the person in charge, [Mr. Pressley] would do some kind of reporting.

According to the State, these deliberations show that the board of appeal found that "Mr. Pressley **at least**, had a duty to make a written report of what happened" on the night of January 6, 2014. (Emphasis added).

Even given the deference that this Court must accord the decision by the board of appeals, we agree with Mr. Pressley that the board of appeals' findings and conclusions are contradictory and unsupported by substantial and material evidence. First, the board of appeals' decision to find Mr. Pressley guilty of negligence in the performance of his duties clearly results from their finding that he failed to file an incident report regarding his entry into the secure food storage area and removal of food inventory on January 6, 2014. Having reviewed all of the rules that Mr. Pressley was charged with violating, the only rules that specifically reference the filing of a written incident report with regard to food service are the Post Orders.[7] As previously discussed, however, the Post Orders indicate that such an incident report is only required when a tamper seal is broken. *See* Post Order, p. 7, § N. Furthermore, the board of appeals did not find that Mr. Pressley broke a tamper seal when entering the secure food storage area. Indeed, the board of appeals specifically concluded that there was insufficient evidence to support a finding that Mr. Pressley violated the Post Order. As such, it appears inconsistent to find that while Mr. Pressley did not violate the specific rule requiring him to file an incident report, presumably because it was not triggered, his failure to file an incident report nevertheless constituted negligence.

Nothing in the State's brief to this Court references any specific evidence that would support the board of appeals' decision that Mr. Pressley's committed negligence in failing to file an incident report even though no tamper seal was broken. Pursuant to our duty to consider the board of appeal's decision "in the light of the entire record," Tenn. Code Ann. § 4-5-322(h)(5)(B), we have considered all of the testimony submitted to the board of appeals. Relevant to this issue, Warden Sexton did testify that the proper procedure in entering into the secure food storage area was to file an incident report to allow proper records to be kept regarding food utilized during the third shift. When asked upon what rules or documents he relied to reach this conclusion, Warden Sexton pointed only to the Post Orders, which by their plain language only require such a report when a tamper seal is broken. Furthermore, Captain Murray testified that:

---

[7] The Post Orders also reference reporting requirements with regard to the use of force. The use of force is not at issue in this case.

If the seals had not been broken and there was a deficit in food, there would've probably been no report made. . . . [A]t that particular time, we didn't have a procedure in there other than the shift report [requiring a correctional officer to file an incident report in that situation]. And probably, if we debated that today, I would agree that the shift report that we have now or they have still, I believe should reflect that. Should reflect that the items that they did get, even though the seals were not in place, should be accounted for. But that particular time, it was not. The only instructions that shift supervisors had at that particular time that would give accountability for seals being broken.

Thus, it appears from the whole of the record before the board of appeals that, at the time the incident took place, the rules and standards applicable to correctional officers only required an incident report when a tamper seal was broken to gain access to the secure food storage area. Because the board did not find that a tamper seal was broken, we cannot conclude that there is substantial and material evidence in the record to support the board of appeals' conclusion that Mr. Pressley committed negligence in failing to file an incident report on the night of January 6, 2014. Because this conclusion was the only basis for discipline found by the board of appeals, we must conclude that the board erred in imposing any discipline on Mr. Pressley.

### III.

Finally, Mr. Pressley argues that the board of appeals abused its discretion in declining to award him attorney's fees and costs. The TEAM Act specifically provides that "the board of appeals may award attorney's fees and costs to a successfully appealing employee." Tenn. Code Ann. § 8-30-318(k). Here, the board of appeals voted two-to-one to deny Mr. Pressley's request for attorney's fees on the basis that he was found guilty of some misconduct.

To support his argument that he was a "successfully appealing employee" under the TEAM Act, Mr. Pressley relies on the Tennessee Supreme Court's Opinion in *Daron v. Department of Correction*, 44 S.W.3d 478 (Tenn. 2001). In *Daron*, the Tennessee Supreme Court considered whether the employee was properly considered a "successfully appealing employee" under the now-repealed Tennessee civil service statute, Tennessee Code Annotated Section 8-30-328(f), *repealed by* 2012 Pub.Acts, c. 800, § 41, eff. Oct. 1, 2012. *Id.* at 480. The employee, a correction officer, was dismissed from his employment with TDOC for misconduct. The civil service commission upheld some instances of misconduct, but reduced the dismissal to a ten-day suspension. The civil service commission nevertheless denied the employee's request for attorney's fees.

27

*Id.* at 478–79. The chancery court reversed, but the Court of Appeals reinstated the decision of the civil service commission. *Id.*

Relying on "an analogous federal provision for guidance," the Tennessee Supreme Court defined "successfully appealing employee" as an employee who "succeeds on a 'significant claim' which affords the employee a substantial measure of the relief sought." *Id.* at 480–81 (citing ***Tex. State Teachers Ass'n v. Garland Indep. School Dist.***, 489 U.S. 782, 791, 109 S.Ct. 1486, 1493, 103 L.Ed.2d 866 (1989)). Although the Court acknowledged that the employee was found guilty of several acts of misconduct, "he obtained a reduction in discipline from termination to a ten-day suspension." ***Daron***, 44 S.W.3d at 481 (citing ***Texas State Teachers Ass'n***, 489 U.S. at 791, 109 S.Ct. at 1493). Ultimately, the ***Daron*** Court concluded that "[b]ecause the [employee] appealed the [T]DOC's decision to terminate his employment and the discipline was reduced to a ten-day suspension, [the employee] is a 'successfully appealing employee'" as required for an award of attorney's fees. ***Daron***, 44 S.W.3d at 481.

Because the TEAM Act likewise bases an award of attorney's fees on a determination of whether the complainant is a "successfully appealing employee[,]" Tenn. Code Ann. § 8-30-318(k), Mr. Pressley argues that this Court should follow the definition of that phrase set forth in ***Daron***. We agree with Mr. Pressley that by choosing to include language allowing attorney's fees to a "successfully appealing employee" under the TEAM Act, the replacement to the former civil service system, the Tennessee General Assembly expressed its intent to allow attorney's fees under the same circumstances as had previously been allowed under the now-repealed civil service system. Indeed, in ***Hamby v. McDaniel***, 559 S.W.2d 774 (Tenn. 1977), the Tennessee Supreme Court explained:

> The legislature is presumed to know the interpretation which courts make of its enactments; the fact that the legislature has not expressed disapproval of a judicial construction of a statute is persuasive evidence of legislative adoption of the judicial construction, especially where the law is amended in other particulars, or where the statute is reenacted without change in the part construed.

*Id.* at 776; *see also* ***Mansell v. Bridgestone Firestone N. Am. Tire, LLC***, 417 S.W.3d 393, 400 (Tenn. 2013) ("[C]ourts must presume that our General Assembly was aware of its prior enactments and knew the state of the law at the time the legislation was passed.") (citing ***Owens v. State***, 908 S.W.2d 923, 926 (Tenn. 1995)). Had the Tennessee General Assembly wanted to change the standard under which a public employee would have been entitled to attorney's fees after an improper dismissal, it certainly could have chosen different language to govern the award of attorney's fees under the TEAM Act. Because the General Assembly instead chose to include the same standard under the TEAM Act as had previously been utilized in the civil service statute, we can only presume that the

same judicial interpretation of that standard must apply. Thus, we conclude that the definition of "successfully appealing employee" set forth in **Daron** is equally applicable under the TEAM Act.

Following the definition of "successfully appealing employee" set forth in **Daron**, Mr. Pressley contends that he is entitled to attorney's fees under the TEAM Act because he was successful in reducing the termination of his employment only to a fourteen day suspension, much like the employee in **Daron**. Indeed, the State concedes in its brief that under the rule set forth in **Daron**, Mr. Pressley must be considered a "successfully appealing employee." The State argues, however, that because of the facts in this case, the board of appeal properly exercised its discretion to decline attorney's fees "where it has found an employee guilty of wrongdoing."

Having reviewed the board of appeals' deliberations, despite the State's protestations, it does appear that the board of appeals declined to award Mr. Pressley any attorney's fees on the basis that he was found guilty of at least one allegation of misconduct. Indeed, no other basis for the denial of attorney's fees was discussed by the board of appeals. Under these circumstances, and given our determination that the board of appeals lacked substantial and material evidence to support the punishment it imposed, we reverse the board of appeals' denial of attorney's fees and remand to the board for the consideration of a reasonable amount of attorney's fees to Mr. Pressley.

**Conclusion**

The judgment of the Chancery Court of Davidson County is reversed. The board of appeals determination that Mr. Pressley committed negligence in the performance of his duties is also reversed. This cause is remanded to the chancery court with instructions to remand to the board of appeals for the determination of reasonable attorney's fees to be awarded to Mr. Pressley under Tennessee Code Annotated Section 8-30-318(k). Costs of this appeal are taxed to Appellee Tennessee Department of Correction, for which execution may issue, if necessary.

_____
J. STEVEN STAFFORD, JUDGE

29